ACCEPTED
04-14-00827-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/4/2015 11:38:05 PM
KEITH HOTTLE
CLERK

## No. 04-14-00827-CV

IN THE COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
3/4/2015 11:38:05 PM
KEITH E. HOTTLE
Clerk

PT INTERMEDIATE HOLDING, INC. AND PERSONAL TOUCH HOLDING CORP.,
Appellants,

v.

LMS CONSULTING LLC,
Appellee.

On Appeal from the 45th Judicial District Court, Bexar County
Honorable Peter Sakai of the 225th Judicial District Court, Presiding

## BRIEF OF APPELLEE LMS CONSULTING LLC

Taylor Dunham and Rodriguez LLP
David E. Dunham
State Bar No. 06227700
ddunham@taylordunham.com
Jennifer Tatum Lee
State Bar No. 24046950
jtatum@taylordunham.com
Isabelle M. Antongiorgi
State Bar No. 24059386
ima@taylordunham.com
301 Congress Avenue, Suite 1050
Austin, TX 78701
Telephone 512.473.2257
Facsimile 512.478.4409

Law Offices of Alejandro Mora PLLC
Alejandro Mora
alejandro@morahealthcarelaw.com
7000 North Mopac Expressway
Suite 200
Austin, Texas 78731
Telephone 512.514.6683
Facsimile 888.320.0589 (fax)

Counsel for Appellee LMS Consulting LLC

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF THE PARTIES AND COUNSEL

Appellant/Defendant PT Intermediate Holdings Inc.
Appellant/Defendant Personal Touch Holding Corp.[1]

*Represented by:*

Jackson Walker LLP
Josh Romero
jromero@jw.com
Monte James
mjames@jw.com
Kimberly Gdula
kgdula@jw.com
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: 512.236.2000
Facsimile: 512.236.2002

Appellee/Plaintiff LMS Consulting LLC

*Represented by:*

| | |
|---|---|
| Taylor Dunham and Rodriguez LLP | Law Offices of Alejandro Mora PLLC |
| David E. Dunham | Alejandro Mora |
| State Bar No. 06227700 | alejandro@morahealthcarelaw.com |
| ddunham@taylordunham.com | 7000 North Mopac Expressway |
| Isabelle M. Antongiorgi | Suite 200 |
| State Bar No. 24059386 | Austin, Texas 78731 |
| ima@taylordunham.com | Telephone: 512.514.6683 |
| Jennifer Tatum Lee | Facsimile: 888.320.0589 |
| State Bar No. 24046950 | |
| 301 Congress Avenue, Suite 1050 | |
| Austin, Texas 78701 | |
| Telephone: 512.473.2257 | |
| Facsimile: 512.478.4409 | |

---

[1] Former Defendant Personal Touch Home Services of NY, Inc., which was dismissed from the case on November 7, 2014 and is not a party to this appeal. Defendants PT Home Services of Dallas, Inc. and PT Home Services of San Antonio, Inc. are not parties to this interlocutory appeal but remain parties in the lawsuit.

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL ........................................................i

STATEMENT OF THE CASE.........................................................................vi

STATEMENT REGARDING ORAL ARGUMENT ............................................. vii

ISSUES PRESENTED................................................................................. viii

INTRODUCTION .......................................................................................1

STATEMENT OF FACTS ............................................................................3

I.  Appellants Do Business in Texas as "Personal Touch Home Care, Inc."............5

    A.     The Personal Touch Home Care, Inc. Website .....................................6

    B.     Appellants Contracted with LMS under the false name "Personal Touch Health Care Inc." .......................................................10

    C.     Appellants Control the Operations of "Personal Touch Home Care Inc." and Performed Pursuant to the Contracts with LMS.........12

II. Appellants' Disavow Doing Business as "Personal Touch Home Care, Inc." After Years of Performance under the Contracts with LMS Consulting ...............................................................................15

III. Plaintiff's Allegations and Appellants' Special Appearance.............................16

SUMMARY OF ARGUMENT .......................................................................18

ARGUMENTS AND AUTHORITIES ....................................................19

I. Standards of Review ....................................................19

    A.    Personal Jurisdiction....................................................21

    B.    Burdens on a Special Appearance....................................................23

II. Appellants' Contacts with Texas Are More Than Sufficient to Establish Specific Jurisdiction and Provide Ample Grounds for Asserting General Jurisdiction....................................................25

    A.    Appellants Failed to Negate Jurisdiction Arising out of their "Personal Touch Home Care, Inc." Recruitment and Staffing Contracts....................................................26

    B.    Appellants Failed to Negate the Allegation That They Recruit Employees in Texas and Contracted with Texas Residents................32

    C.    Appellants Failed to Negate that They Had Committed a Tort, In Whole or In Part, In this Sate....................................................34

    D.    Appellants Fail to Demonstrate that the Exercise of Jurisdiction Does Not Comport with Traditional Notions of Fair Play and Substantial Justice ....................................................34

III. Alternatively, the Texas Contacts of PT Dallas and PT San Antonio Should Be Attributed to Appellants Pursuant to Jurisdictional Veil Piercing Doctrine ....................................................35

CONCLUSION....................................................41

PRAYER FOR RELIEF ....................................................41

CERTIFICATE OF SERVICE ....................................................43

CERTIFICATE OF COMPLIANCE ....................................................43

APPENDIX....................................................44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801 (Tex. 2002) .................23

*BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002) ......................................................................19, 20, 23, 24, 35

*Capital Tech. Info. Servs. Inc. v. Arias & Arias Consultores*, 240 S.W3d 741 (Tex. App.—Dallas 2008, pet denied)..........................................37

*Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468 (Tex. 2007) ..............23, 37

*In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014).............................................................................36

*El Puerto De Liverpool, S.A. De CV v. Servi Mundo Llantero S.A. De CV*, 82 S.W.3d 622 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.) ....................................................................................................36

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223 (Tex. 1991) ....................................................................35

*Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261 (Tex. App.—San Antonio 2002, pet. dism'd).......................................24, 32

*Huynh v. Nguyen*, 180 S.W.3d 608 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).................................................................23, 24, 26

*Ji-Haw Indus. Co. v. Broquet*, No. 04-07-00622-CV, 2008 WL 441822 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) ....................24, 25, 26

*Kelly v. Gen. Interior Const. Inc.*, 301 S.W.3d 653 (Tex. 2010)...........19, 20, 22, 23

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (Tex. 2007) ........................................................................................19, 20, 23, 24

*Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142 (Tex. 2013), *reh'g denied* (Dec. 13, 2013) ........................................................22, 23, 24

*PHC-Minden LP v. Kimberly-Clark Corp.*, 235 S.W.3d 163 (Tex. 2007) ................................................................21, 35, 36, 40, 41

*Pulmosan Safety Equip. Corp. v. Lamb,* 273 S.W.3d 829 (Tex. App.— Houston [14th Dist.] 2008, pet. denied) ........................................24

*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009)................................................................21, 22, 23, 24

*San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. v. Villarreal*, 330 S.W.3d 27 (Tex. App.—Corpus Christi 2010, no pet.) ........................................................................................24, 26

*Spir Star AG v. Kimich*, 310 S.W.3d 868 (Tex. 2010) ....................................21, 23

*Tempest Broad. Corp. v. Imlay*, 150 S.W.3d 861 (Tex. App.— Houston [14th Dist.] 2004, no pet.) .....................................................20

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex.2004)................................................................................24, 26

*Touradji v. Beach Capital P'ship, LP.,* 316 S.W.3d 15 (Tex. App.— Houston [1st Dist.] 2010, no pet.)...............................................24, 34

*Watkins v. Isa*, No. 04-11-00622-CV, 2012 WL 2021929 (Tex. App.—San Antonio June 6, 2012, no pet.) (mem. op.).....................................30

*Wright v. Sage Eng'g, Inc.,* 137 S.W.3d 238 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)..................................................................24

**Statutes**

Tex. Civ. Prac. & Rem. Code § 17.042 ...................................................21

Tex. Civ. Prac. & Rem. Code § 17.042 (1), (3).........................................32

Tex. Civ. Prac. & Rem. Code § 17.042 (2).............................................34

**Rules**

Tex. R. Civ. P. 120a(3) ...................................................................18, 25

# STATEMENT OF THE CASE[2]

*Nature of the Case:*　　This is a suit for breach of various recruiting and staffing contracts, as well as a case of tortious interference with existing contracts. Appellee alleges that it provided recruiting and staffing services throughout Texas pursuant to contract. Appellants Personal Touch Holding Corp. and PT Intermediate Holding Inc., among other Defendants, are liable for breach of the recruiting and staffing contracts and are also liable for tortious interference with existing contracts.

*Course of Proceedings*:　　Through its pleadings, Appellee named Appellants Personal Touch Holding Corp. and PT Intermediate Holding Inc. along with their subsidiaries, PT Home Services of Dallas, Inc., PT Home Services of San Antonio, Inc. and Personal Touch Home Care of N.Y., Inc., as Defendants. CR 1-11, 68-79, 269-88. PT Home Services of Dallas, Inc. and PT Home Services of San Antonio, Inc. filed answers. CR 28-39, 263-68. Appellants and Personal Touch Home Care of N.Y., Inc. filed special appearances, challenging personal jurisdiction. CR 12-27, 80-108, 109-178, 294-324. Appellee filed several responsive pleadings. CR 40-65, 179-261, 326-334. The special appearance motions were heard by the Honorable Peter Sakai on October 28, 2014. 2 RR 1.

*Trial Court Disposition*:　　On November 7, 2014, the trial court issued orders denying Appellants' special appearances of Appellants and sustaining the special appearance of Personal Touch Home Care of N.Y., Inc. CR 337-341.

---

[2] Being dissatisfied with Appellants Personal Touch Holding Corp. and PT Intermediate Holding, Inc.'s Statement of the Case, Appellee LMS Consulting LLC submits its own pursuant to Rule 38.2(b).

**STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Texas Rule of Appellate Procedure 38.1(e), Appellee submits that oral argument will assist the Court in the disposition of this appeal. Although the law is well-established, the record in this case is extensive and there appears to be significant disagreement between the parties regarding the issues to be determined by this Court. Thus, Appellee requests oral argument.

## ISSUES PRESENTED[3]

1.  Whether Appellants satisfied their burden to negate all potential bases of jurisdiction *not based on any jurisdictional veil piercing theory*, specifically:

    A.  Appellee's assertion of specific jurisdiction arising from Appellants' breach of their "Personal Touch Home Care, Inc." recruiting and staffing contracts with Appellee which called for and were performed in Texas for over two years;

    B.  Appellee's assertion of specific jurisdiction arising from Appellants' recruitment of Texas residents for employment with "Personal Touch Home Care, Inc." made pursuant to the recruiting contracts that form the bases of Appellee's claims;

    C.  Appellee's assertion of specific jurisdiction arising from Appellants' tortious interference with Appellee's contracts with its contractors who worked in Texas; and

    D.  Appellee's assertion of general jurisdiction based on Appellants' continuous and systematic contacts with Texas as "Personal Touch Home Care, Inc." and otherwise.

2.  Whether the exercise of jurisdiction in this case complies with traditional notions of fair play and substantial justice.

3.  Whether Appellants exercised sufficient control over their Texas subsidiaries to justify attributing the contacts of their Texas subsidiaries to Appellants.

---

[3] Being dissatisfied with Appellants Personal Touch Holding Corp. and PT Intermediate Holding, Inc.'s identification of the issues, Appellee LMS Consulting LLC submits its own pursuant to Rule 38.2(b).

TO THE HONORABLE COURT OF APPEALS:

## INTRODUCTION

The trial court's order dismissing Appellant/Defendants Personal Touch Holding Corp. and PT Intermediate Holding, Inc. ("PT Intermediate") should be affirmed because Appellants have failed to satisfy their burden to negate all potential bases of jurisdiction. Appellants' brief is based upon a fallacy—namely that the only possible means for establishing personal jurisdiction is via jurisdictional veil piercing.

Plaintiff/Appellee LMS Consulting LLC ("LMS Consulting") has asserted (and the record supports) both general and specific jurisdiction due to Appellants' conduct directed at Texas, and Appellants have failed to satisfy their burden to negate these potential bases for jurisdiction.

Representing themselves to Appellee and the public as "Personal Touch Home Care, Inc.," Appellants entered into over 20 recruiting and staffing contracts with Appellee. These contracts called for LMS Consulting to supply Appellants' Texas operations with personnel and facilitated Appellants' recruitment of Texas residents for employment in this state. Appellee asserts that Appellants breached these contracts by, among other things, failing to pay amounts owed.

Additionally, Appellee asserts that Appellants committed an intentional tort, purposefully directed at Texas. When the parties' relationship soured, Appellants

induced Appellee's contractors to breach their contracts with Appellee and begin working directly for Appellants or for Appellee's competitors.

The only evidence Appellants offer to negate these jurisdictional bases is the unsubstantiated assertion that they do not do business as "Personal Touch Home Care, Inc." However, the record is replete with evidence that the Appellants did business as "Personal Touch Home Care, Inc." Appellants presented themselves to Appellee and the rest of the world as "Personal Touch Home Care, Inc.," controlled all significant aspects of the "Personal Touch Home Care, Inc." business, and performed as "Personal Touch Home Care, Inc." for over two years pursuant to the contracts at issue. For over two years, Appellants made the hiring decisions with respect to persons referred by Appellee to "Personal Touch Home Care, Inc." and paid Appellee's invoices that pertained to its Texas-based activities.

The trial court's denial of Appellants' special appearance should be affirmed because Appellants failed to satisfy their burden to negate all bases of jurisdiction and the evidence is more than sufficient to support the trial court's determination.

Alternatively, should the Court find that Appellants satisfied their burden to negate all possible bases of jurisdiction (not based on a veil piercing theory,) the contacts of Appellants' Texas subsidiaries, Defendants PT Home Services of Dallas, Inc. ("PT Dallas") and PT Home Services of San Antonio, Inc. ("PT San Antonio"), should be attributed to Appellants for jurisdictional purposes because

Appellants control the internal business operations and affairs of these Texas subsidiaries.

## STATEMENT OF FACTS[4]

Appellants Personal Touch Holding Corp. and PT Intermediate, as well as Defendants PT Dallas and PT San Antonio, are all part of a family of corporations based out of Bayside, New York[5] that identifies itself and does business as "Personal Touch Home Care, Inc." CR 60-65 ("Personal Touch Home Care, Inc. began operations in 1974 and since then has grown into a national company with over 50 locations in 12 states."); CR 62-64; CR 233-235, CR 237-239; CR 241; CR 247, CR 260-261; CR 49-53 at ¶¶ 3, 5-6, 8, 18.

Appellants operate and control the business of "Personal Touch Home Care, Inc." PT Intermediate is a subsidiary of Personal Touch Holding Corp. Defendants PT Dallas and PT San Antonio are two of many subsidiaries of PT Intermediate and indirect subsidiaries of Personal Touch Holding Corp. CR 294.

As characterized by Appellants' counsel, his "client is a home health agency that operates in 11 states, . . . including Texas." 2 RR 5:1-2; *see also* CR 60-65.

---

[4] Being dissatisfied with Appellants Personal Touch Holding Corp. and PT Intermediate Holding, Inc.'s Statement of Facts, Appellee LMS Consulting LLC submits its own pursuant to Rule 38.2(b).

[5] The corporate office is located at 22215 Northern Boulevard, Third Floor, Bayside, New York, 11361. It is the official principal office and place of business for both Appellants and PT San Antonio and PT Dallas. CR 190-91 at Interrogs. 2, 3; CR 324 at ¶ 9; App. 1, Balk Dep. 6:14-19, 17:15-18:1.

No business entity incorporated and chartered under any state's laws called "Personal Touch Home Care, Inc." actually exists. *See* 2 RR 35:21-36:19. Further, Appellants do not present themselves by their proper names or otherwise distinguish between any of the corporate entities, and did not do so in their interactions with Appellees. *See* CR 49 at ¶ 3; CR 233-35, 237-39, 243-46; CR 60-65.

Appellants use the appellation "Personal Touch Home Care Companies" to collectively refer to Appellants and all of their subsidiaries, including PT Dallas and PT San Antonio. App. 1, Balk Dep. 8:11-9:10; CR 93 at ¶ 2; CR 128 at ¶ 2; CR 170 at ¶ 2; CR 172 at ¶ 2; CR 322 at ¶ 2. Appellee will employ the same definition herein and will use "Personal Touch Home Care Company" to refer to any and all of these entities.

Appellee LMS Consulting is a recruiting and staffing consulting company. CR 49 at ¶ 2. Throughout 2011 and 2012, LMS entered into more than twenty staffing and recruiting agreements with "Personal Touch Home Touch Inc." to provide staff for its Texas operations. CR 49-50 at ¶ 3; *e.g.* CR 233-235, 237-239; CR 274-76 at ¶¶ 15-17.

The parties did business in Texas pursuant to these contracts for over two years; Appellants paid LMS Consulting pursuant to these very contracts. *See* App. 1 Balk Dep. 24:1-9; CR 173 ¶ 4; CR 52 at ¶ 17.

Appellants no longer wish to pay the agreed upon rates and are attempting to disavow the alias "Personal Touch Home Care, Inc." to avoid contractual liability. According to Appellants, "Personal Touch Home Care, Inc." does not exist and the continuous use of the name in their contracts, marketing, and communications over the past 20 plus years was simply a matter of "inadvertence," a mistake. 2 RR 35:21-36:19, 42:5-10; *see also* App1, Balk Dep. 15:19-16:16, 17:15-18:7 Appellants allege that none of the Personal Touch Home Care Companies do business as "Personal Touch Home Care, Inc." App. 1, Balk Dep. 13:19-22.

## I.    Appellants Do Business in Texas as "Personal Touch Home Care, Inc."

The Personal Touch Home Care Companies descend from a New York entity formally incorporated as "Personal Touch Home Care, Inc." in 1974. CR 60. In 1992, this entity changed its name to "Personal Touch Home Care of NY, Inc."[6] CR 52 at ¶ 19; App. 1Balk Dep. 13:23-10; 2 RR 23:20-21. However, as further detailed herein, Appellants *are* "Personal Touch Home Care, Inc.":

(a) Appellants have presented themselves to Appellee and the world as "Personal Touch Home Care, Inc.," CR 60-65 (Personal Touch Website); CR 256; CR 286; CR 49-51 ¶¶ 3, 5, 6, 10, 17;

(b) Appellants have contracted as "Personal Touch Home Care, Inc.," including the contracts with Appellee and in the separate contracts with Texas residents hired pursuant to LMS's recruiting efforts, CR 233-235, 237-239, CR 241; CR 247, CR 260-261; CR 49 at ¶ 3;

---

[6] Personal Touch Home Care of NY, Inc. is no longer a party to this proceeding. CR 337.

(c) Appellants performed as "Personal Touch Home Care, Inc." pursuant to the contracts with LMS; Appellants made the personnel decisions with respect to LMS referrals and paid (or did not pay) LMS's invoices, CR 49-52 at ¶¶ 8-9, 13-14, 17; CR 248-56;

(d) Appellants control and manage the operations of "Personal Touch Home Care, Inc.," including the operations in Texas, through a handful of executives in Bayside, New York, *see* CR 191-92 at Interrogs. 5, 6; App.1, Balk Dep. 18:17-19, 24:16-20; CR. 52 ¶ 17; CR 172 at ¶ 2; *see also* CR 57; and

(e) Appellants pay taxes as "Personal Touch Home Care, Inc." in Texas, *see* CR 286.

### A.     The Personal Touch Home Care, Inc. Website

All of the Personal Touch Home Care Companies market their services through a single website controlled entirely by Appellants, www.pthomecare.com (the "Personal Touch Website"). CR 60-65; CR 324 at ¶ 9; App. ___ Balk Dep. 10:11-13, 14:11-13, 18-20.   All of the email addresses of the various representatives of the Personal Touch Home Care Companies reflected on the correspondence with LMS Consulting utilizes the domain name "pthomecare.com." CR. 50 at ¶ 5; *e.g.* CR 248-56.

The Personal Touch Website states that "Personal Touch Home Care, Inc. began operations in 1974 and since then has grown into a company with over 50 locations in 12 states" and each page lists Appellants' Bayside, New York office as the "Contact" address for "Personal Touch Home Care, Inc." CR 60-65; CR 191 at

Interrog. No. 3.  None of the webpages appear to identify any of the Personal Touch Home Care Companies' proper names.  *See* CR 60-65.

## PERSONAL TOUCH HOMEPAGE EXCERPTS[7]



[7] CR 60-65.

# PERSONAL TOUCH TEXAS LOCATIONS WEBPAGE EXCERPTS[8]

## LOCATIONS

Personal-Touch Home Care founded in 1974, the company operates from more than 50 locations in 12 states. The Company provides home health care, including mental health, pediatric, rehabilitation, and hospice services in 12 states. The company also provides supplementary staffing to hospitals and nursing homes.

### Indiana, Kentucky, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Texas, Virginia

## Texas

Personal-Touch Home Care, Inc.
40 N.E. Loop 410
San Antonio, TX 78216
Phone: (210) 342-2667  Fax: (210) 340-2416
Directions

To Make A Referal Click Here

---

Personal-Touch Home Care, Inc.
617 S. Texas, Suite A
Weslaco, TX 78596
Phone: (956) 351-6939 Fax: (956) 969-3601
Directions
Administrator: Elizabeth DeLaRosa  Edelarosa@pthomecare.com

---



## CONTACT

222-15 Northern Blvd, 3rd Floor
Bayside, NY 11361
Tel: 718-468-4747

Mail: customercare@pthomecare.com

---

[8] CR 62-63.

As reflected on the preceding page, until it became an issue in this suit, App. 1, Balk Dep. 15:23-16:17, 18:2-7, the Personal Touch Website identified the Texas locations (as well as every other location) as an office of "Personal Touch Home Care, Inc." CR 62-63; *see also* CR 64-65. Like every other page, the Texas locations page listed the Appellants' Bayside, New York office as the "Contact" address for "Personal Touch Home Care, Inc." CR 62-63; *see also* CR 64-65.

When the Vice President of Operations for all of the Personal Touch Home Care Companies, Dr. Trudy Balk, was asked about the website's repeated invocation of "Personal Touch Home Care, Inc.," she replied that its use "was a mistake." App. 1, Balk Dep. 18:2-5. Contrary to representations in her subsequent affidavit, at her deposition Dr. Balk testified that the Appellants' Bayside office was the proper contact address for the Texas locations of "Personal Touch Home Care, Inc.":

> Q: This page lists the Texas location contact address as 222-15 in Bayside, New York. . . . Is that the correct contact address?
>
> Dr. Balk: Yes. That's the corporate office.
>
> Q: And this website shows that the name of the Texas locations is "Personal Touch Home Care, Inc.," correct?
>
> Dr. Balk: Yes. As we said, it was a mistake.

App. ___ Balk Dep. 17:22-18:5; *see also id.* at 10:11-13; CR 190-191 at Interrogs. 2, 3; *Cf.* CR 324 at ¶ 11.

**B. Appellants Contracted with LMS under the false name "Personal Touch Health Care Inc."**

As exemplified in the following image, all the contracts with LMS Consulting identify "Personal Touch Home Care, Inc." as the signatory.



CR 233-35, 237-39. The listed Weslaco address for "Personal Touch Home Care, Inc." on the contracts is identical to that which appears adjacent to Appellants' Bayside, New York address on their website. CR 62-63.

Dr. Balk is one of a handful of executives based out of Bayside, New York who control and operate "Personal Touch Home Care, Inc."[9]  She has been with the company for 28 years and works out of the New York corporate offices.; CR 170 at ¶ 2; CR 50 at ¶ 6.  As Vice President of Operations for all of the Personal Touch Home Care Companies, she is charged with supervising all of the offices across the country, including the Texas offices. CR 170 at ¶ 2; CR 50 at ¶ 6; App. 1, Balk Dep. 9:17-10:10, 30:1-5.

Ms. Elizabeth De la Rosa, the representative that signed the contracts on behalf of signatory "Personal Touch Home Care, Inc.," reports to Dr. Balk.  CR 50 ¶ 6; App. 1, Balk Dep. 11:11-18.  Dr. Balk testified that Ms. De la Rosa, regional administrator for the Texas offices, did not have authority to enter into these contracts.  App. 1, Balk Dep. 12:22-13:18 (Dr. Balk: "She was not authorized to sign legal agreements on . . . behalf of the company.") Thus, it would appear that Dr. Balk and Appellants dictate what contracts are to be entered into for the Texas operations, though Dr. Balk denies having knowledge of the LMS contracts.  *Id.* at 12:22-13:1.

---

[9] The same executives control and manage Appellants and all of the subsidiaries, including the Texas entities PT Dallas and PT San Antonio.  Dr. Felix L. Glaubach is the president and/or a director of the Personal Touch Home Care Companies; Mr. Robert Marx is a director and/or vice president; Mr. Anthony Castiglione is the vice president and treasurer; and Ms. Lorigay Laskin is the "contract manager." *See* CR 191-92 at Interrogs. 5, 6; App. 1, Balk Dep. 18:17-19, 24:16-20; CR. 52 ¶ 17; CR 172 at ¶ 2; *see also* CR 57.

**C.     Appellants Control the Operations of "Personal Touch Home Care Inc." and Performed Pursuant to the Contracts with LMS**

Appellants performed under these "Personal Touch Home Care, Inc." contracts with LMS for over two years.   Appellants are heavily involved in managing human resources for the Personal Touch Home Care Companies, including the Texas offices.   Dr. Balk's duties as Vice President of Operations include supervision of each offices' "personnel for sure." App. 1, Balk Dep. 9:17-10:10, 30:1-5.

All Texas personnel decisions made with referrals from Appellee were controlled by the corporate office and Dr. Balk. CR 42 at ¶ 13; *see also* CR 49-53 at ¶¶ 6, 14-16; CR 248, 250, 251, 253.

Routine correspondence from Personal Touch Home Care representatives exchanged with LMS regarding the staffing and recruiting contracts that are at issue in this case:

— "Please do not shoot the messenger, but one of the owners daughters in New York niece [sic] has decided to consider the LVN position in Dallas. . . . [I]f this corporate plan falls through I want to go with Twyla at the $35.00 rate." CR 255.

— "I am having to send all the resumes to corporate before we set up interviews." CR 248.

— "[C]orporate will not let me hire her. . . . I really liked liz [sic] for the job but, it is not my decision." CR 250.

— "I think I have [an interview] through the head hunter from corporate." CR 251.

— "Corporate has approved Erika in El Paso. She will be in San Antonio with me next week for Training." CR 253.

The New York personnel of Appellants prepared a referral form specifically for LMS Consulting's use in Texas. CR 51 at ¶ 10; CR 256.

Employment applications filled out by LMS Consulting recruits, as well as employment offers made to and accepted by LMS Consulting recruits for employment in Texas, list "Personal Touch Home Care, Inc." as the employer. *E.g.* CR 257, 260-61; 2 RR 28:12-30:5.

Appellants managed the payroll and employee benefits for all of LMS recruits and staff ultimately engaged to provide services for the Personal Touch Home Care, Inc. Texas operations. App. 1, Balk Dep. 9:17-10:10, 19:25-20:22, 30:1-5, 9-13. Appellants manage payroll and employee benefits for all of the Personal Touch Home Care Companies, including the Texas operations. App. 1, Balk Dep. 9:17-10:10, 19:25-20:22, 30:1-5, 9-13.

Appellants paid Appellee for the Texas recruiting and staffing services provided by LMS Consulting from Appellants' master account; and decisions about whether to pay or not pay LMS came from Dr. Balk and the Appellants in New York. *See* App. 1, Balk Dep. 24:1-9; *see also id* at 22:21-23:2; CR 51-52 at ¶¶ 8, 14, 16-17; CR 173 at ¶ 4. Appellants handle the accounting and finances for the Texas operations (as they do for all of the Personal Touch Home Care

Companies), including accounts payable and receivable and taxes. App.1, Balk Dep. 22:1-11, 22:21-23:2, 24:1-9; CR 173 ¶ 4; CR 57. CR 324-25 at ¶¶ 14, 15.

Appellants control the master account that is used to manage the funds of all of the Personal Touch Home Care Companies, including the Texas operations. App. 1, Balk Dep. 22:1-11, 22:21-23:2, 24:1-9; CR 173 ¶ 4. As Dr. Balk testified, "It all comes from one pot." App.1, Balk Dep. 22:10.

Appellants also managed the invoicing and receivables for all of the Personal Touch Home Care Companies, including the Texas operations. [cite]. Thus, Appellants billed and collected from Texas clients for the services provided out of the "Personal Touch Home Care, Inc." Texas offices, including services provided by LMS staff or recruits. App. 1, Balk Dep. 28:4-21; [cite Castiglione Aff]; CR 254 (email referencing the involvement of "corporate" in retrieving Medicaid payment for services provided in Texas through an LMS Consulting staff placement).

Initially, Dr. Balk testified that PT Intermediate handled human resources matters, billing and invoicing, and accounts payable for the Personal Touch Home Care Companies (and also identified PT Intermediate as her employer), but corrected herself in her errata sheet and identified Personal Touch Holding Corp. as the entity that performed these functions. App. 1, Balk Dep. 19:25-20:22, 24:16-20, 30:9-15. It appears that she did not change everything that needed

correcting however, because her October 5, 2014 affidavit conflicts with her deposition testimony and other sworn statements. *See infra* pp. 29-32.

## II. Appellants' Disavow Doing Business as "Personal Touch Home Care, Inc." After Years of Performance under the Contracts with LMS Consulting

Despite the extensive evidence to the contrary, Appellants deny that they do business as "Personal Touch Home Care, Inc." *Cf.* CR 60-65; CR 233-235, CR 237-239; CR 241; CR 247, CR 260-261; CR 49-53 at ¶¶ 3, 5-6, 8, 18. When asked to explain their continued use of that appellation by the trial court, Appellants called the operation of business under a false corporate name for the past two decades—a name that lacks registration or other charter—"inadvertence":

Court: Mr. James, can you respond?

Mr. James: Yes, your Honor. First and foremost, Personal Touch Home Care, Inc. has not been sued and is not a defendant and is not before this Court.

Court: So there is a separate incorporation. Personal Touch Home Care, Inc., . . . is a separate entity?

Mr. James: It is absolutely a separate entity. And it is -- and it is not sued.

Court: Does it exist at this time?

Mr. James: I don't think that it exist. [sic] I think that it was inadvertence on behalf of the holding company to maintain that name, but it is unequivocal. I mean Mr. Mora just said on the record that Personal Touch Home Care, Inc. changed its name to Personal-Touch

Home Care of N.Y., Inc. That was 22 years ago, Your Honor. The name was changed then.

The fact that he has the -- and the website has been changed, as well, I mean, they -- and, again, there was no question that there was inadvertence. . . .

. . .

Court: But yet on their advertisement . . . their stationery, they're all using Personal Touch Home Care, Inc., correct?

Mr. James: Yes sir. Your Honor it was inadvertence and that's been changed.

2 RR 35:21-36:19; *see also* App. 1, Balk Dep. 15:19-16:16, 17:15-18:7.

## III.   Plaintiff's Allegations and Appellants' Special Appearance

Appellee pleads both specific and general personal jurisdiction as to

Appellants. Specifically, Plaintiff's Second Amended Petition provides

> The Court has jurisdiction over defendants PT Intermediate and Personal Touch Holding because each of them committed an intentional tort of which Plaintiff complains herein and such action constituting this intentional tort was purposefully directed to Texas. The Court has jurisdiction over defendants PT Intermediate and/or Personal Touch Holdings also because both of these entities purposefully availed themselves of the benefits of conducting business in Texas. . . .

Count 1
Breach of Contract
(Staffing Agreements)

. . . Defendants[10] entered into valid and enforceable Staffing Agreements with LMSC. . . . Defendants breached their obligations to pay LMSC amounts due under the Staffing Agreements. . . . .

. . .

Count 2
Breach of Contract
(Recruiting Agreements)

. . . Defendants entered into valid and enforceable Recruiting Agreements with LMSC. . . . Defendants breached their obligations to pay LMSC amounts due under the Staffing Agreements. . . . .

Count 3
Tortious Interference

. . . All of the Defendants knew that LMSC has contracts with these persons, including but not limited to Angela Dickson, Carla Clark, and Hollie Richard. . . . Defendants . . . willfully and intentionally interfered with those contracts by soliciting those individuals to terminate their contracts with LMSC. . . . Defendants' willful and intentional interference with LMSC's contracts with Angela Dickson, Carla Clark, and Hollie Richard, and others constitute actions directed at residents of Texas and directed toward Texas. . . .

CR 269-288 at ¶¶ 11, 31-32, 35-36, 39-41.

---

[10] "Defendants" is defined in Plaintiff's Second Amended Petition as including Appellants PT Intermediate Holding, Inc. and Personal Touch Holding Corp. *See* CR 269.

In the alternative, Appellee asserts specific and general personal jurisdiction over Appellants pursuant to the doctrine of jurisdictional veil piercing. CR 272 at ¶ 11.

Considering the record in its entirety the including "the pleadings, . . . such affidavits and attachments as may be filed by the parties, the results of the discovery processes, and any oral testimony," Tex. R. Civ. P. 120a(3), the Honorable Peter Sakai, denied Appellants' special appearances. CR 339-42.

## SUMMARY OF ARGUMENT

The trial court's denial of Appellants' special appearances should be affirmed because Appellants failed to satisfy their burden to negate all possible bases for jurisdiction and the trial court's implied findings are supported by more than a scintilla of evidence.

Appellants' recruiting and staffing contracts with LMS Consulting, made under the guise of "Personal Touch Home Care, Inc.," facilitated and resulted in Appellants' recruitment of Texas residents for employment in Texas. These facts, which form the heart of Appellee's claims, are sufficient to establish both specific and general jurisdiction. Appellants' conclusory assertion that they are not "Personal Touch Home Care, Inc." is not sufficient to overcome the great weight of the evidence, which supports the implied finding that Appellants are in fact "Personal Touch Home Care, Inc."

Additionally, with respect to the tortious interference claim, the Appellants have offered absolutely no evidence to negate Appellee's assertion that Appellants intentionally tortiously interfered with its contracts with LMS Consulting's Texas contractors.

Alternatively, if the Court finds that Appellants satisfied their burden to negate the foregoing bases for jurisdiction, it nonetheless should affirm the trial court's determinations under a jurisdictional veil piercing analysis. The "Personal Touch Home Care, Inc." contacts Appellants would attribute solely to Defendants PT Dallas and PT San Antonio are properly attributed to Appellants in virtue of their extensive control over the operations and affairs of the Texas operations and the LMS contracts.

## ARGUMENTS AND AUTHORITIES

### I.    Standards of Review

A trial court's determination of a nonresident's special appearance is reviewed *de novo*. *Kelly v. Gen. Interior Const. Inc.*, 301 S.W.3d 653, 657 (Tex. 2010) ("Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law."); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (hereinafter "*Moki Mac*"); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002) (hereinafter "*BMC*").

"When as here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the

judgment and supported by the evidence are implied." *Kelly*, 301 S.W.3d at 657; *Moki Mac*, 221 S.W.3d at 574; *BMC*, 83 S.W.3d at 795.

"When the appellate record includes the reporter's and clerk's records, these implied findings may be challenged for legal and factual sufficiency." *BMC*, 83 S.W.3d at 795.

The same *legal and factual sufficiency* standard of review applies when, as is the case here, an appellant requests conclusions of fact and law but the trial court declines to file any. *See Tempest Broad. Corp. v. Imlay*, 150 S.W.3d 861, 867-69 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Tempest does not provide any authority supporting a *de novo* review of implied fact findings in this circumstance. . . . Accordingly, we will review any implied findings of fact for legal and factual sufficiency.").

A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the challenged finding. *Id.* at 868. "In reviewing a factual sufficiency challenge, [the appellate court will] set aside the trial court's decision only if its ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Id.*

"If a reviewing court determines that a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.* at 794.

## A.     Personal Jurisdiction

"Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statue provides for it; and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010).

The Texas long-arm statute provides as follows:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state; or
>
> (3) recruits Texas residents, directly or through an intermediary located in this states, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code § 17.042.

The Texas long-arm does not provide an exhaustive list of all activities that may constituted "doing business;" rather, it identifies some examples. *PHC-Minden LP v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007).

"[T]he Texas long-arm statute's broad 'doing-business' language allows the statute to reach as far as the federal constitutional requirements of due process will allow.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337

(Tex. 2009) (hereinafter "*Retamco*"). "Under constitutional due-process analysis, personal jurisdiction is achieved when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with 'traditional notions of fair play and substantial justice.'" *Id.* at 338

"A Defendant establishes minimum contacts with a state when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Kelly*, 301 S.W.3d at 653. "A nonresident's contacts can give rise to general or specific personal jurisdiction. . . . Continuous and systematic contacts with a state give rise to general jurisdiction, while specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013), *reh'g denied* (Dec. 13, 2013).

"[S]pecific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis." *Id.* "[I]n some circumstances a single *contract* may meet the purposeful-availment standard." *Retamco*, 278 S.W.3d at 339.

"Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Retamco*, 278 S.W.3d at 341.

"When a nonresident defendant has purposefully availed itself of the privilege of conducting business in a foreign jurisdiction, it is both fair and just to subject that defendant to the authority of that forum's courts." *Spir Star AG*, 310 S.W.3d at 872.

## B. Burdens on a Special Appearance

Texas "special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly*, 301 S.W.3d at 653. "[T]he plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction."[11] *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 149; *see also Moki Mac*, 221 S.W.3d at 574; *Retamco*, 278 S.W.3d at 337; *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002); *BMC*, 83 S.W.3d at 793. The fair notice pleading standard applies:

> There is no requirement that plaintiffs . . . plead in their petition the theories or bases of personal jurisdiction upon which they rely; rather, the only relevant pleading requirement flows from the need to plead allegations sufficient to bring nonresident defendants within the provisions of the long-arm statute. . . . This minimal pleading requirement can be satisfied by alleging that nonresident defendants are doing business in Texas.

*Huynh v. Nguyen*, 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (internal citations omitted).

---

[11] The burden shifting scheme does not apply to jurisdictional veil piercing, however. When seeking to establish jurisdiction through veil piercing, the plaintiff bears the burden of proof. *E.g. Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 482 (Tex. 2007).

Additionally, the plaintiff's original pleadings, as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied its burden. *See Wright v. Sage Eng'g, Inc.,* 137 S.W.3d 238, 249 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

"In determining jurisdictional pleas asserted by a defendant, [courts] take as true the pleadings and allegations of the plaintiff and review the pleadings and allegations in the light most favorable to the plaintiff." *Pulmosan Safety Equip. Corp. v. Lamb,* 273 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *Ji-Haw Indus. Co. v. Broquet*, No. 04-07-00622-CV, 2008 WL 441822, at *2 (Tex. App.—San Antonio Feb. 20, 2008, no pet.); *Huynh*, 180 S.W.3d at 619; *San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. v. Villarreal*, 330 S.W.3d 27, 38 (Tex. App.—Corpus Christi 2010, no pet.).

"When the initial burden is met, the burden shifts to the defendant to negate <u>*all potential bases*</u> for personal jurisdiction the plaintiff pled." *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 149 (emphasis added); *see also Moki Mac*, 221 S.W.3d at 574; *Retamco*, 278 S.W.3d at 337; *BMC*, 83 S.W.3d at 793; *See Touradji v. Beach Capital P'ship, LP.,* 316 S.W.3d 15, 26 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Gutierrez v. Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261, 268 (Tex. App.—San Antonio 2002, pet. dism'd) *as supplemented* (Jan. 29, 2003);

*Ji-Haw Indus. Co. v. Broquet*, No. 04-07-00622-CV, 2008 WL 441822, at \*4 (Tex. App.—San Antonio Feb. 20, 2008, no pet.).

"The Court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of the discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3).

## II. Appellants' Contacts with Texas Are More Than Sufficient to Establish Specific Jurisdiction and Provide Ample Grounds for Asserting General Jurisdiction

"Personal Home Care, Inc." lacks registration or official charter. *See* 2 RR 35:21-36:19. It does not have a veil to be pierced. Appellants confuse veil piercing with what is actually their control of the business operating under the bogus name "Personal Touch Home Care, Inc." Accordingly, Appellants have been sued for breaching contracts specific to Texas pertaining to the business *they* conduct in Texas under the false name "Personal Touch Home Care, Inc."

The trial court's orders should be affirmed because Appellants failed to satisfy their burden to negate all potential bases of jurisdiction. Specifically, Appellants failed to negate the following:

A. Appellee's assertion of specific jurisdiction arising from Appellants' breach of their "Personal Touch Home Care, Inc." recruiting and staffing contracts with Appellee which called for and were performed in Texas;

B. Appellee's assertion of general and specific jurisdiction arising from Appellants' recruitment of Texas residents for employment with "Personal Touch Home Care, Inc." made pursuant to the recruiting contracts that form the bases of Appellee's claims; and

C. Appellee's assertion of specific jurisdiction arising from Appellants' tortious interference with Appellee's contracts with its contractors who worked in Texas.

Appellants also fail to demonstrate that the exercise of jurisdiction in this case will not comport with traditional of notions of fair play and substantial justice.

## A. Appellants Failed to Negate Jurisdiction Arising out of their "Personal Touch Home Care, Inc." Recruitment and Staffing Contracts

Plaintiff's Second Amended Petition alleges that Appellants did business in this state and breached various recruiting and staffing agreements wherein Appellee provided personnel for Appellants' Texas operations for a period of over two years.[12] *See* CR 269-288 at ¶¶ 11, 31-32, 35-36; *see also* CR 233-239; CR 49-53 at ¶¶ 1, 6, 8, 17.

Appellants failed to present any competent evidence to show that they were not acting as "Personal Touch Home Care, Inc." in entering into, performing under, and breaching the 23 contracts that form the bases of LMS Consulting's breach of contract claims.

_____

[12] Appellants brief is based on a fallacy—namely the only possible means for establishing personal jurisdiction is via jurisdictional veil piercing. To the extent there is any ambiguity in the record, the pleadings must be liberally construed in Appellee's favor. *See Tex. Dep't of Parks & Wildlife,* 133 S.W.3d at 226; *Ji-Haw Indus. Co.,* 2008 WL 441822, at *2; *Huynh,* 180 S.W.3d at 619; *San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V.,* 330 S.W.3d at 38.

As was made clear at the special appearance hearing, there is no properly incorporated entity formally registered to conduct business under the name "Personal Touch Home Care, Inc." 2 RR 35:21-36:19 (Mr. James: "I don't think that [Personal Touch Home Care, Inc.] exists [sic]. I think that it was inadvertence on behalf of the holding company to maintain that name.").

All the Defendants deny doing business as "Personal Touch Home Care, Inc." App. 1, Balk Dep. at 13:19-22 (Q: "Do the Texas Personal Touch entities that are under your operational control go by the name of "Personal Touch Home Care, Inc."? Dr. Balk: "No.").

However, it is apparent that *somebody* going by the name "Personal Touch Home Care, Inc." contracted with Appellee to provide recruitment and staffing services for operations in Texas and performed pursuant to those contracts for a period of over two years. *See e.g.* CR 233-35, 237-39; CR 49-53. The record is replete with assertions and evidence that Appellants are "Personal Touch Home Care, Inc." including the following:

   (a) Appellants presented themselves to Appellees as "Personal Touch Home Care, Inc." and represented to Appellee that they were managed and controlled from Appellants' Bayside, New York office, CR 233-35, 237-39; CR 60-65; CR 49 at ¶¶ 3, 5-6, 8, 13-14, 17-18; App. 1, Balk Dep. CR 248-256;

(b) Appellants exclusively manage and control the Personal Touch Website, www.pthomecare.com, CR 324 at ¶ 9, through which they have presented themselves to Appellee and the world as operating by the name "Personal Touch Home Care, Inc." CR 60-65. Appellants do not identify any proper corporate names or otherwise distinguish any corporate entities. CR 248-56. The "Personal Touch Home Care, Inc." emails used to correspond with Appellee throughout the parties' course of dealings, all end with "@pthomecare.com," CR 50 at ¶ 5; CR 248-56.

(c) Although Appellants appear to control the contracting for the Texas operations, App. 1, Balk Dep. 12:11-18, 22-13:4, 12-18, they made no effort to name a proper and distinct entity in their (1) contracts with Appellee, CR 233-35, 237-39; or (2) their contracts with Texas residents referred to Appellants by LMS Consulting as "Personal Touch Home Care, Inc.'" *e.g.*, CR 260-261, CR 247;

(e) Appellants made the personnel decisions with respect to the persons LMS Consulting had referred Appellants to for employment in Texas; CR 50 at ¶¶ 8-9, 13-14, 17; CR 248-56;

(f) Appellants paid—and decided when not to pay—LMS Consulting's invoices for the Texas recruiting and staffing services it provided out of an account managed and controlled by Appellants, CR 50 at ¶¶ 8-9, 13-14, 17; CR 173 ¶ 4; App. 1, Balk Dep. 24:2-9;

(g) Appellants paid the employees and staff that were engaged as a result of the LMS Consulting's recruitment and staffing services—and all other Texas vendors and employees—through an account managed and controlled by Appellants, CR 173 at ¶ 4; App. 1, Balk Dep. 22:4-11, CR 324-25 at ¶ 14;

(h) To the extent provided, Appellants provided the employment benefits for all of the Texas operations' employees, including those referred by LMS Consulting, CR 324 at ¶ 12, App. 1, Balk Dep. 19:19-20:22, 30:9-13;

(i) Appellants handled the accounts receivable for the Texas operations, which including managing the billing for the Texas clients and receiving the payments for services provided to Texas clients, including

those receiving services from LMS referred staff CR 173 at ¶ 4, App. 1, Balk Dep. 21:10-25, 28: 15-21;

(j) Appellants' Bayside, New York, corporate office is the proper contact address for the Texas locations and is also the official principal office for PT San Antonio and PT Dallas;

(k) Dr. Balk, Vice President of Operations for all of the Personal Touch Home Care Companies oversees the Texas operations. App. 1, Balk Dep. 9:17-10:10, 30:1-5. She is one of a handful of executives who control the "Personal Home Touch Inc." business out of Appellants' corporate Bayside, New York office. *See supra* Note 9. Ms. De la Rosa, the Texas regional administrator who signed the contracts on behalf of "Personal Touch Home Care, Inc." reports to Dr. Balk, CR 233-35, 237-39, CR 49-53 at ¶ 6; and

(l) Appellants pay taxes as "Personal Touch Home Care, Inc." in Texas, *see* CR 286.

Appellant fail to present any competent or credible evidence to negate these assertions that they were doing business as "Personal Touch Home Care, Inc." in Texas with Appellees.

The only evidence presented to negate the implied finding that they are "Personal Touch Home Care, Inc." and that they performed pursuant to these contracts is the conclusory testimony of Dr. Trudy Balk and the *mea culpa* plea of "mistake." App. 1, Balk Dep. 16:22, CR 94 at ¶94; CR 322 at ¶ 6.

Until the issue was raised in this lawsuit, Appellants presented themselves to Appellee and the world as a single business operated out of Bayside, New York only referred to as "Personal Touch Home Care, Inc." CR 60-65; App. 1, Balk Dep. 16:19-17:17. Dr. Balks' assertions that (1) Appellants are not parties to

"Personal Touch Home Care, Inc." contracts; (2) that the "Personal Touch Home Care, Inc." Texas offices are not theirs; and (3) that the Texas residents recruited for employment with "Personal Touch Home Care, Inc.," are conclusory and not competent evidence. *See Watkins v. Isa*, No. 04-11-00622-CV, 2012 WL 2021929 at *3 (Tex. App.—San Antonio June 6, 2012, no pet.) (mem. op.) ("By simply stating 'at the time of the accident, Isa was acting within the course and scope of her employment with Texas Tech University Health Sciences Center,' McMahon asserts only a legal conclusion without factual basis or rationale. . . . Affidavit testimony that is conclusory is substantively defective and amounts to no evidence.") (citing *Coastal Transport Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)).

Dr. Balk is also not a credible witness. Her sworn testimony is inconsistent throughout. For example, on April 7, 2014, Dr. Balk verified interrogatory responses identifying the Bayside, New York address as the official principal office of PT San Antonio, PT Dallas, and PT Intermediate. CR 188-193 at Interrogs. 2, 3. At her April 30, 2014 deposition, Dr. Balk testified that the Bayside, New York address was the correct address for PT Intermediate for PT San Antonio and PT Dallas. App. 1, Balk Dep. 10:11-13, 17:22-18:1. However, on October 3, 2014 she testified by affidavit that while Appellants share these offices, PT San Antonio and PT Dallas do not share those offices. CR 324 at ¶ 9.

At her deposition on April 30, 2014, Dr. Balk initially testified that Appellant PT Intermediate handled human resources matters, billing and invoicing, and accounts payable for the Personal Touch Home Care Companies (which would include the Texas operations) and also identified PT Intermediate as her employer. App. 1, Balk Dep. 19:25-20:22, 24:16-20. She later corrected herself in her errata sheet and identified Personal Touch Holding Corp. as the entity that performed these functions. App. 1, Balk Dep. 19:25-20:22, 24:16-20, 30:9-15. On June 3, 2014, by affidavit she testified that Appellant PT Intermediate had no employees and performed no functions for its subsidiaries, whatsoever, CR 94-95 at ¶¶ 5, 7. However, her October 3, 2014 affidavit states that Personal Touch Holding Corp. does not provide billing services to PT Dallas or PT San Antonio. CR 324 at ¶ 13.

Appellants fail to identify who controls the contracting for the "Personal Touch Home Care, Inc." operations in Texas. At her deposition, Dr. Balk testified that Ms. De la Rosa, regional administrator for Texas, did not have authority to enter into contracts for "the company (though her testimony did imply that she was the person with authority)." App. 1, Balk Dep. 12:11-18, 22-13:4, 12-18. And by affidavit on October 3, 2014, Dr. Balk testified that Appellant Personal Touch Holding Corp. does not approve contracts for the Texas operations, CR 324 at ¶ 10. Thus, just as Appellants disclaim "Personal Touch Home Care Inc," there is no one who is charged with entering into contracts for its Texas operations.

Although Appellants may have challenged the allegation that they are and have operated in Texas as "Personal Touch Home Care, Inc.," they have failed to effectively negate the bases. *Gutierrez*, 100 S.W.3d at 273-74 ("While DT–Cayman effectively *challenged* all bases of personal jurisdiction, we are not persuaded that it *negated* all bases. . . . We decline to impose on a plaintiff in a special appearance hearing the burden of proving the elements of liability, as opposed to showing the cause of action arose from or related to the nonresident's activities.").

### B. Appellants Failed to Negate the Allegation That They Recruit Employees in Texas and Contracted with Texas Residents

The long-arm statute extends specifically to include a non-resident who "recruits Texas residents, directly *or through an intermediary* located in this state, for employment inside or outside this state" and those who contract with Texas residents when the contract, at least in part, calls for performance in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042 (1), (3) (emphasis added).

"Count 2" of Plaintiff's Second Amended Petition is entitled "Breach of Contract (Recruiting Agreements)." CR 279 at ¶ 34-37. Appellee has pled that Appellants engaged in the very recruiting activity set forth in the long-arm statute. CR 279 at ¶¶ 35-36.

Appellants failed to negate the Appellee's allegation that Appellants recruit employees in Texas. As should be quite apparent from the recruiting contracts that form the bases of LMS Consulting's claims, "Personal Touch Home Care, Inc." has recruited and hired employees to work in Texas. CR 257, 260-61; 2 RR 28:12-30:5, 31:10-32:6.

The evidence reflects that Appellants controlled all the hiring decisions for "Personal Touch Home Care, Inc." made with respect to LMS referrals. *See* CR 248, 250, 251, 253, 255 (emails reflecting Appellant control over hiring decisions); CR 49-53 ¶¶ 3, 13 (LMS engaged by "Personal Touch Home Care, Inc." and told that hiring decisions were made by corporate in New York); App. 1, Balk Dep. 12:11-18, 22-13:4, 12-18 (Texas regional administrator not authorized to entered into contracts on behalf of "company").

The evidence further reflects that Appellants provided guidance with respect to the recruiting, CR 51 at ¶ 10, CR 256, paid the salaries and benefits for the employees working for the operations in Texas, CR 324-25 at ¶¶ 12, 14, CR 173 at ¶ 4, App. 1, Balk Dep. 19:19-20:22, 22:4-11, 30:9-13 and determined whether the recruiter would be paid. CR 50-51 ¶¶ 6, 8, 14, 16-17.

Because Appellants failed to negate this basis for both specific and general jurisdiction, the trial court's order should be affirmed.

C.  **Appellants Failed to Negate that They Had Committed a Tort, In Whole or In Part, In this Sate**

The long-arm statute specifically allows exercise of personal jurisdiction as to a non-resident who commits a tort in whole or in part in this state. Tex. Civ. Prac. & Rem. Code § 17.042 (2). Appellee properly pled that Appellants intentionally committed the tort of tortious interference with its existing contracts in Texas. CR 280 at ¶ 41. Accordingly, Appellants had the burden to negate this possible basis for jurisdiction with evidence.

Appellants failed to offer any evidence that they did not tortiously interfere with Appellee's contracts as alleged. Thus, they have failed to satisfy their burden to negate this potential basis for jurisdiction. *See Touradji,* 316 S.W.3d at 26.

D.  **Appellants Fail to Demonstrate that the Exercise of Jurisdiction Does Not Comport with Traditional Notions of Fair Play and Substantial Justice**

Appellants have presented no evidence of any extraordinary burden imposed by the exercise of jurisdiction in this case.

> The assertion of personal jurisdiction must comport with fair play and substantial justice. In this inquiry, it is incumbent upon the defendant to present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.' . . . Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

Appellants simply make the conclusory assertion belied by the evidence that they have no operations or offices here. This is insufficient to satisfy their heavy burden.

**III. Alternatively, the Texas Contacts of PT Dallas and PT San Antonio Should Be Attributed to Appellants Pursuant to Jurisdictional Veil Piercing Doctrine**

Alternatively, the Court may properly exercise both personal and general jurisdiction by ascribing to Appellants the contacts of Defendants PT Dallas and PT San Antonio.

"Personal jurisdiction may exist over a non-resident defendant if the relationship between the foreign corporation and [its subsidiary] that does business in Texas is one that would allow the court to impute the [subsidiary] corporation's "doing business" to the [parent corporation]." *BMC*, 83 S.W.3d at 798.

> To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*Id.* at 799; *see also PHC-Minden, LP*, 235 S.W.3d at 174.

"[V]eil piercing for purposes of liability ('substantive veil piercing') is distinct from imputing one entity's contacts to another for jurisdictional purposes ('jurisdictional veil piercing')." *PHC-Minden LP*, 235 S.W.3d at 174; *see also In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 546 (5th Cir. 2014) ("This court has noted that 'the alter ego test for attribution of contacts, *i.e.,* personal jurisdiction, is less stringent than that for liability.'") (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.2 (5th Cir. 1985)).

> [C]ourts should determine whether the subsidiary is "separate and distinct from its parent corporation for personal jurisdiction purposes," taking into account the amount of the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary.

*PHC-Minden*, 235 S.W.3d at 174 (quoting 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4).

"The operative question in a jurisdictional analysis is whether [the] subsidiary corporations are mere 'divisions' or 'branches' of a larger whole, such that the subsidiaries' contacts with Texas should be attributed to [the parent]." *El Puerto De Liverpool, S.A. De CV v. Servi Mundo Llantero S.A. De CV*, 82 S.W.3d 622, 634 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.)

When seeking to establish jurisdiction through veil piercing, the plaintiff bears the burden of proof. *E.g., Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 482 (Tex. 2007).

All of the relevant facts and circumstances surrounding the operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist. *Capital Tech. Info. Servs. Inc. v. Arias & Arias Consultores*, 240 S.W3d 741, 749 (Tex. App.—Dallas 2008, pet denied).

In this case, the Texas entities were so "fused" that even Dr. Balk—who has been with the company for 28 years—gets confused with respect to who is doing what and what hat she is purportedly wearing. App. 1, Balk Dep. 19:25-20:22, 24:16-20, 30:9-15; CR 322 at ¶ 2.

The record reflects extensive control by Appellants over the Texas operations:

(a) The same officers and directors control Appellants and PT San Antonio and PT Dallas, CR 191-92 at Interrogs. 5, 6; App.1, Balk Dep. 18:17-19, 24:16-20; CR. 52 ¶ 17; CR 172 at ¶ 2; *see also* CR 57;

(b) Dr. Balk, Vice President of Operations for all of the Personal Touch Home Care Companies, oversees the Texas operations out of Appellants' corporate Bayside, New York office. Ms. De la Rosa, the Texas regional administrator who signed the contracts on behalf of "Personal Touch Home Care, Inc." reports to Dr. Balk, CR 322 at ¶ 2, App. 1, Balk Dep. 10:4-10, CR 50 at ¶¶ 6, 8;

(c) PT Intermediate owns PT San Antonio and PT Dallas and Personal Touch Holding Corp owns PT Intermediate, *see e.g.* Appellants' Br. p. 7;

(d) Appellants' Bayside, New York office is also the principal office for PT San Antonio and PT Dallas and the proper contact for the Texas operations of "Personal Touch Home Care, Inc.," CR 190-191 at Interrogs. 2, 3; CR 324 at ¶ 11; CR 60-65; App. 1, Balk Dep. 17:22-18:5.

(e) The evidence suggests that Appellants control the contracting for the Texas operations, *see* App. 1, Balk Dep. 12:11-18, 22-13:4, 12-18;

(f) Appellants control personnel decisions, including decisions to engage persons referred by LMS Consulting for employment in Texas; CR 52 at ¶ 13; CR 248-56;

(g) Appellants pay vendors for the Texas operations (including LMS Consulting) from Appellants' New York account, CR 52 at ¶¶ 16-17; CR 173 at ¶ 4; App. 1, Balk Dep. 24:2-9;

(h) Appellants pay payroll for the Texas operations (including payroll Texas residents referred to Appellants for employment in Texas) through Appellants' New York account, App. 1, Balk Dep. 22:4-11, CR 324-25 at ¶ 14, CR 173 at ¶ 4.

(i) Appellants provide employee benefits for the Texas operations through Appellants' New York account, including payment of Texas residents employed for Texas operations, CR 324 at ¶ 12; App. 1, Balk Dep. 19:19-20:22, 30:9-13;

(j) Appellants manage accounts receivable and provide billing services for the Texas operations, including billing for Personal Touch clients receiving services from LMS-referred staff, CR 173 at ¶ 4, App. 1, Balk. Dep. 21:10-25, 28:15-21; and

(k) Appellants pay taxes as "Personal Touch Home Care, Inc." in Texas, CR 286.

Appellants raise a factual challenge to Appellee's allegations of control with respect to (1) the allegation that Appellants handle the personnel decisions; and

(2) the allegation that Appellants manage the contracts. However there is ample evidence to support both such contentions. Testimony presented by Appellee and the documentary evidence indeed reflects that Appellants were controlling the recruitment and hiring or personnel for the Texas operations. CR

Appellants would have the court believe that just as no one is doing business as "Personal Touch Home Care, Inc.," no one has authority to contract on behalf of the Texas corporations. Dr. Balk specifically testified that Ms. De la Rosa, the regional administrator for Texas who reports to Dr. Balk, did not have authority to enter into the contracts with LMS and her testimony suggests the responsibility lies with her. *See* App. 1, Balk Dep. 11:11-16, 12:22-13:18 ("Q: Was Ms. De la Rosa authorized to execute agreements with LMS on behalf of the Personal Touch Home Care Companies?" . . . Dr. Balk: "I mean, I was not aware of the contracts."). However, she also testified that Appellants do not perform this function. Appellants offer no affirmative testimony on who decides matters of contract for the Texas operations.

Appellants also seem to take issue with the assertion that they provide billing services. But this was testified to by Dr. Balk at deposition (though later contradicted by affidavit).

Appellants' main challenge on veil piercing is a legal sufficiency challenge; they allege that even if the allegations of factual control asserted are true, it is not sufficient to satisfy Appellee's burden to show atypical parental control.

However, appellants consider these items in isolation and as a group of factors to consider in determining "whether the subsidiary is separate and distinct from its parent corporation." *PHC-Minden*, 235 S.W.3d at 176. No one item is determinative. While it may be the case that Texas court have decline to pierce the veil when one of these items obtains, but other do not, that does not mean that all of these control items taken together would not satisfy the test.

The Personal Touch Home Care Companies are not "separate and distinct entities." *Id.* They do not act or represent themselves as separate and distinct entities, and they did not do so with respect to their dealings with Appellee. Instead, Appellants act as "Personal Touch Home Care, Inc.," a single organization operating in 12 states. CR 60-65. They don't identify any separate or distinct entities in their business dealings.

All of the factors listed in *PHC-Minden* counsel in favor of piercing the jurisdictional corporate veil: PT San Antonio and PT Dallas are wholly-owned subsidiaries of PT Intermediate, which is a wholly-owned subsidiary of Personal Touch Holding Corp.; Appellants share corporate offices and have the same officers and directors; and Appellants were heavily involved not only in the

performance of the recruitment and staffing contracts at issue in this case, but also in the policies and general affairs of the Texas subsidiaries. *Cf. PHC-Minden*, 235 S.W.3d at 174, 176 (holding atypical requirement not satisfied when the parent had no involvement with the subsidiary's recruitment efforts; companies had separate headquarters and did not share directors; and subsidiary established its own budget, policies and procedures).

Considering collectively, the contacts of PT Dallas and PT San Antonio are properly attributed to Appellants because they are not separate and distinct from the parent organizations.

## CONCLUSION

Appellants confuse the issues. "Personal Touch Home Care, Inc." has no veil to pierce. All three grounds of the Texas long-arm statute were properly pled against Appellants with respect to their conduct directed Texas and performed under the false name "Personal Touch Home Care, Inc." Appellants failed to satisfy their burden to negate all possible bases for jurisdiction. The trial court's denial of Appellants' special appearances should therefore be affirmed.

## PRAYER FOR RELIEF

Appellee LMS Consulting LLC respectfully asks this Court to affirm the trial court's orders denying Appellants PT Intermediate Holding Inc. and Personal Touch Holding Inc.'s special appearances below in all respects, and that the Court grant it such other and further relief to which it may be entitled.

Respectfully submitted,

TAYLOR DUNHAM AND RODRIGUEZ LLP
301 Congress Avenue, Suite 1050
Austin, TX 78701
512-473-2257
512-478-4409 (fax)

By: */s/Isabelle M. Antongiorgi*
    David E. Dunham
    State Bar No. 06227700
    ddunham@taylordunham.com
    Jennifer Tatum Lee
    State Bar No. 24046950
    jtatum@taylordunham.com
    Isabelle M. Antongiorgi
    State Bar No. 24059386
    ima@taylordunham.com
 Counsel for Appellee LMS Consulting LLC

**CERTIFICATE OF SERVICE**

On March 4, 2015, the undersigned certifies that she served a copy of this Brief of Appellees on the following by e-service, in compliance with Texas Rules of Appellate Procedure 9.5 and 25.1(e):

Monte James
mjames@jw.com
Kimberly Gdula
kgdula@jw.com
Josh Romero
jromero@jw.com
Jackson Walker LLP
100 Congress Avenue
Suite 1100
Austin, Texas 78701
*Counsel for Appellants*

*/s/Isabelle M. Antongiorgi*
Isabelle M. Antongiorgi

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief complies with the word limitation contained in Texas Rule of Appellate Procedure 9.4(i)(2)(B) in that the brief contains a total of 9,151 words, excluding parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

*/s/Isabelle M. Antongiorgi*
Isabelle M. Antongiorgi

# APPENDIX

Appendix 1          Deposition of Trudy Balk (CR 194-227; CR 146-149)

Appendix 2          *Watkins v. Isa*

Appendix 3          *Ji-Haw v. Indus. Co. Ltd. v. Broquet*

# APPENDIX 1

CAUSE NO. 2014CI00450

LMS CONSULTING, LLC,        ) IN THE DISTRICT COURT
            Plaintiff     )
                          )
                          )
VS.                       ) 45TH JUDICIAL DISTRICT
                          )
PT HOME SERVICES OF DALLAS,)
INC. d/b/a Personal-Touch  )
Home Care, Inc., PT HOME   )
SERVICES OF SAN ANTONIO,   )
INC. d/b/a Personal-Touch  )
Home Care, Inc., and       )
PERSONAL-TOUCH HOME CARE   )
OF NY, INC. f/k/a          )
PERSONAL-TOUCH HOME CARE,  )
INC.,                      )
            Defendants   ) BEXAR COUNTY, TEXAS

*******************************************************

ORAL DEPOSITION OF

TRUDY BALK

APRIL 30, 2014

*******************************************************

ORAL DEPOSITION OF TRUDY BALK, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on April 30, 2014, from 9:10 a.m. to 9:59 a.m., before Christi Sanford, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Jackson Walker, LLP, 100 Congress Avenue, Suite 1100, Austin, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.

APPEARANCES


For the Plaintiff:

     Mr. Alejandro Mora
     Law Offices of Alejandro Mora, PLLC
     7000 North Mopac Expressway, Suite 200
     Austin, Texas 78731
     (512) 514-6683
     (888) 320-0589 Fax
     alejandro@morahealthcarelaw.com

For the Defendants:

     Mr. Monte F. James
     Ms. Jenny L. Smith
     Jackson Walker, LLP
     100 Congress Avenue, Suite 1100
     Austin, Texas 78701
     (512) 236-2000
     (512) 236-2002 Fax
     mjames@jw.com
     jlsmith@jw.com

195

INDEX

PAGE

Appearances                                        2

WITNESS: TRUDY BALK

    Examination by Mr. Mora                         4
    Examination by Mr. James                        28
Signature and Changes                              30
Reporter's Certificate                             32


EXHIBITS

NUMBER          DESCRIPTION                        PAGE
1    Plaintiff's Notice of Deposition of the
     Corporate Representative of Personal-Touch
     Home Care of NY, Inc.                          4
2    NPI Registry Provider Details,
     Personal-Touch Home Care of NY, Inc.           6
3    Affidavit of Trudy Balk, PhD                   7
4    Printout from Web site www.pthomecare.com,
     New York, Long Island and Westchester
     Locations                                      14
5    Printout from Web site www.pthomecare.com,
     Texas Locations                                16
6    Check Number 253128 to LMS Consulting, LLC
     from Personal-Touch Home Aides, 4/5/13         22
7    Check Number 633995 to LMS Recruiting and
     Staffing from Personal Touch Holding Corp.,
     2/4/13                                         24
8    Personal-Touch Home Care of New York, Inc.
     Stock Certificate                              25
9    PT Home Services of Dallas Stock
     Certificate                                    26
10   PT Home Services of San Antonio Stock
     Certificate                                    26
11   Personal-Touch Home Care Employee Stock
     Ownership Plan, 2012 Form 5500 by
     BrightScope                                    26

TRUDY BALK,

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. MORA:

Q.   Ms. Balk, good morning.  My name is Alejandro Mora.  I'm the attorney for LMS Consulting, LLC.

Would you please introduce yourself one more time?

A.   Yeah.  My name is Trudy Balk.

Q.   Okay.  I'm going to be handing you what I'm going to be marking as Plaintiff's Exhibit Number 1. It's the Plaintiff's Notice of Deposition to the Corporate Representative of Personal-Touch Home Care of NY, Inc.

(Exhibit Number 1 was marked)

Q.   Have you seen this document before?

A.   Yes.

Q.   Do you understand that you're appearing here as the corporate representative of Personal-Touch New York, Inc., and you understand that your responses are not only on behalf of yourself, but also the answers of Personal-Touch Home Care of New York, Inc.?

MR. JAMES:  Objection, form.

A.   Yeah.  Personal-Touch Home Care of NY, I think.

Q.   (BY MR. MORA)  NY, Inc.  Thank you.

Can we agree that when I refer to Personal-Touch New York that we are referring to Personal-Touch Home Care of NY, Inc.?

A. Yes.

MR. JAMES: Objection, form. You said the wrong name.

MR. MORA: Personal-Touch Home Care of NY, Inc. My question was: Can we -- can we agree that when I refer to Personal-Touch New York that we're referring to Personal-Touch Home Care NY, Inc.?

MR. JAMES: Maybe I misheard, and I apologize.

A. Yes. That is correct. Yeah.

Q. (BY MR. MORA) Can you please explain what you've done to -- aside from meeting with your attorney, what you've done to prepare for this deposition?

A. Just talked to my attorneys, really.

Q. Okay. Are there any documents that you've reviewed?

A. Just the ones -- my affidavit and the -- yeah, some of the other documents that went back and forth.

Q. Okay. What is the address of the principal place of business for Personal-Touch New York?

A. Personal-Touch New York? It's 18618 Hillside Avenue --

Q.    Okay.

A.    -- in Jamaica, New York.

Q.    How long has that address been its principal place of business?

A.    That's a good question.  I mean, over ten years.

Q.    Okay.  And where was the previous place of business?

A.    For Personal-Touch New York --

Q.    Yes, ma'am.

A.    -- that you're referring to?

We had offices in Flushing, New York, before we moved here.

Q.    Okay.  Does Personal-Touch New York maintain a mailing address at 22215 Northern Boulevard, Third Floor, Bayside, New York 11361?

A.    That is our corporate offices.

Q.    Your corporate offices?

A.    Correct.

(Exhibit Number 2 was marked)

Q.    Okay.  I'm going to hand you what's been marked as Exhibit 2.  And it's been pulled from the NPI Registry Web site.  Are you familiar with the -- what an NPI number is?

A.    Yes.

Q. Do you know if the NPI listed here for Personal-Touch Home Care of NY, Inc., is the correct NPI number?

A. I have no idea without looking at a list.

Q. Okay. Do you know Lorigay Laskin?

A. Yes.

Q. And who is she?

A. She's our contract manager. She works for me.

Q. Okay.

A. And she handles the NPI numbers.

Q. She's responsible for NPI?

A. Uh-huh.

Q. Okay. And the mailing address there is correct for Personal-Touch Home Care of NY, Inc.?

A. On the second page there 18618, that's the correct address for Personal-Touch New York.

(Exhibit Number 3 was marked)

Q. Okay. I'm going to hand you what's been marked as Exhibit 3. And this is the affidavit of Trudy Balk. Have you seen this document before?

A. Yes.

Q. Would you please turn to page 3 of the exhibit.

A. Okay.

Q. Would you confirm that that is your signature?

A. Yes, it is.

Q.    And you understand that when you signed the affidavit, you swore that the statements contained in the affidavit were within your personal knowledge and are true and correct?

A.    Yes.

Q.    Are all the statements within this affidavit within your personal knowledge?

A.    Yes.

Q.    Are all the statements true and correct?

A.    Yes.

Q.    Are you the vice president of operations for the Personal-Touch Home Care companies?

A.    Yes, I am.

Q.    Okay.  What companies are encompassed within the Personal-Touch Home Care companies?

A.    Okay.  I'll try to list them, but don't hold me to it.

Q.    Okay.

A.    Personal-Touch Home Care of NY, Inc., Personal-Touch Home Aides of New York, Inc., Personal-Touch Home Care of Westchester, Inc., Personal-Touch Home Care of Long Island, Inc., PTS of Westchester, Inc., Personal-Touch Home Care of PA, Inc., Personal-Touch Home Care of VA, Inc., Personal-Touch Home Care of Baltimore, Inc., Personal-Touch Home Care

of Ohio, Inc., Personal-Touch Home Care of Kentucky,
Inc., Personal-Touch Home Care of Indiana, Inc.,
Personal-Touch Home Care of Greater Portsmouth, Inc.,
Personal-Touch Home Care of MA, Massachusetts,
Personal-Touch Home Care of SE Mass, Southeast Mass,
Inc.

Q.    Okay.

A.    And Texas.  I forgot Texas.  How could I do
that?  PT Home Services of San Antonio, Inc., and PT
Home Services of Dallas, Inc.

Q.    Okay.  Are you the vice president of operations
for PT Home Services of Dallas, Inc.?

A.    Yes.

Q.    And are you the vice president of operations
for PT Home Services of San Antonio, Inc.?

A.    Yes.

Q.    Okay.  From which of those entities do you
receive compensation as an employee?

A.    I don't receive compensation from either one of
them.

Q.    I'm sorry.  From any of the Personal-Touch Home
Care companies that you referred to.

A.    I receive my compensation from a parent
company.

Q.    Okay.  And who is the parent company?

A.  PT Intermediate Holding.

Q.  Okay.  And what services do you provide in return for that compensation?

A.  I supervise most of the offices directly.  Some of them report directly to someone else.  But, basically, I oversee the operations in terms of regulatory changes, clinical -- I don't do this all myself, but obviously have people that do it with me -- you know, clinical changes, financial changes that have to be made, personnel for sure.

Q.  Okay.  What is the address of the principal place of business for PT Intermediate Holding?

A.  22215 Northern Boulevard, Bayside, New York.

Q.  Are you familiar with LMS Consulting, LLC?

A.  Yes.

Q.  Okay.  Did any of the companies within the Personal-Touch Home Care companies enter into any staffing agreements with LMS Consulting, LLC?

A.  Just the top -- the Texas offices.

Q.  Could you be more specific?

A.  Okay.  PT Home Services of Dallas, PT Home Services of San Antonio, and I believe a couple of the branches of San Antonio, Weslaco and El Paso.

Q.  Okay.  Did any company within the Personal-Touch Home Care companies enter into any

recruitment agreement with LMS Consulting, LLC?

A.    Yes.  The same -- same entities.

Q.    Okay.  As the vice president of operations for the Personal-Touch Home Care companies, did you approve these agreements with LMS before Personal-Touch companies entered into them?

A.    No, I didn't.

Q.    Did you read the agreements before they were executed?

A.    No, I didn't.

Q.    Do you know Ms. Elizabeth DeLaRosa?

A.    Yes.

Q.    What is -- who is she and what is her role within the Personal-Touch Home Care companies?

A.    She's a regional administrator for the Texas offices.

Q.    Was she authorized to execute agreements with LMS Consulting, LLC?

MR. JAMES:  Objection, form.

Q.    (BY MR. MORA)  What was her -- what was her role in entering into agreements with LMS Consulting, LLC?

MR. JAMES:  Objection, form.  You know, I'm having trouble -- you're not -- you're not misstating anything, but I'm having trouble keeping up.

You go so fast.  I'm trying to keep up with it in my mind.  If you could slow down just a tad.

MR. MORA:  Sure.

MR. JAMES:  I don't mean to tell you how to do it at all.  I'm not trying to do that.  But I'm having trouble following -- you're using acronyms and I'm having trouble keeping up with it, to make sure that I get objections in.

MR. MORA:  Sure.  We can slow it down. What I'll do is I'll refer to every entity fully.

MR. JAMES:  Well, you don't have to do that.  That's not -- I'm not trying to make it difficult.  I literally am just having trouble keeping up with you.

MR. MORA:  Okay.

MR. JAMES:  And I'm trying to listen and type.  I probably should quit typing and just listen.

MR. MORA:  Okay.

MR. JAMES:  Do you mind repeating that one?

MR. MORA:  That's not a problem.

Q.  (BY MR. MORA)  Was Ms. DeLaRosa authorized to execute agreements with LMS on behalf of the Personal-Touch Home Care companies?

MR. JAMES:  Objection, form.

A.    I mean, I was not aware of the contracts.

Q.    (BY MR. MORA)  Okay.  What is Ms. DeLaRosa's authority in entering into agreements on behalf of Personal-Touch?

MR. JAMES:  Objection, form.

A.    Say it again.

MR. JAMES:  And I -- you know, and I won't keep making speaking deals.  I don't -- I don't do that.  But when you say Personal-Touch, that's why my objection's out there.  What company are you talking about?

Q.    (BY MR. MORA)  What is Ms. DeLaRosa's -- was she authorized to execute agreements on behalf of Personal-Touch of San Antonio, Inc.?

A.    She has a lot of autonomy, but she was -- she is not authorized to sign legal agreements on --

Q.    Okay.

A.    -- behalf of the company.

Q.    Do the Texas Personal-Touch entities that are under your operational control go by the name of Personal-Touch Home Care, Inc.?

A.    No.

Q.    Okay.  Does Personal-Touch New York go by the name of Personal-Touch Home Care, Inc.?

A.    It did until a certain point, at which it was

changed to Personal-Touch Home Care of NY, Inc.

Q. Okay. When did it change its name?

A. Oh, boy. I think the beginning of the '90s.

Q. Okay.

A. Like 1992, something like that.

Q. Were you the operations officer at that time?

A. Yes.

Q. Okay. And do you know why it changed its name at that time?

A. I don't.

Q. Okay. Are you familiar with the Web site address www.pthomecare.com?

A. Yes.

Q. And what Personal-Touch companies under your operational control uses that Web site address?

MR. JAMES: Objection, form.

A. I'm not sure what you mean.

Q. (BY MR. MORA) Which Personal-Touch Home Care companies use this Web site?

A. All of the Personal-Touch Home Care offices.

(Exhibit Number 4 was marked)

Q. Okay. I'm going to hand you what's been marked as Exhibit 4. And this is a printout from the Web site www.pthomecare.com.

A. Right.

Q.    Do you recognize this Web page as belonging --

A.    Yes.

Q.    -- as a Web site belonging to the Personal-Touch Home Care companies?

A.    Yes.

Q.    Does this Exhibit 4 accurately reflect the locations of the Personal-Touch Home Care companies in New York?

          MR. JAMES:  Objection, form.

A.    The addresses?

Q.    (BY MR. MORA)  Yes, ma'am.  The locations.

A.    The locations?

          MR. JAMES:  Objection, form.

Q.    (BY MR. MORA)  Does this represent the correct address of the New York locations for Personal-Touch Home Care companies?

          MR. JAMES:  Objection, form.

A.    Yes.  These are the addresses.

Q.    (BY MR. MORA)  Okay.  Do the Personal-Touch companies do business in New York as Personal-Touch Home Care, Inc.?

A.    No.

Q.    If not, is there a mistake on this Web page?

A.    Absolutely.

Q.    Okay.  And as the operations officer, would

you be in charge of seeing that such a mistake was remedied?

A.    Yes.

Q.    Okay.  And that has not been done?

A.    Yes, it has been.

Q.    It has been corrected?

A.    Yes.

Q.    When was that corrected?

A.    When we realized this a couple weeks ago, I suppose.

Q.    Okay.

A.    A month ago.

Q.    So until then, the Web site for the Personal-Touch Home Care company is listed as doing business in New York as Personal-Touch Home Care, Inc., correct?

A.    Correct.

            (Exhibit Number 5 was marked)

Q.    I'm going to hand you what's been marked as Exhibit 5.  This is a printout from the Web page -- from the Web site www.pthomecare.com.  Do you recognize this Web page as being from the Web site belonging to the Personal-Touch Home Care companies?

            MR. JAMES:  Objection, form.

A.    I'm not sure.  I'd have to see.  I don't

remember exactly.

Q. (BY MR. MORA) Okay. Does this -- does this Exhibit 5 accurately reflect the addresses of the Texas locations for the Personal-Touch Home Care companies?

MR. JAMES: Objection, form.

MR. MORA: Would you please clarify your objection?

MR. JAMES: When you say Personal-Touch Home Care companies, that's ambiguous.

MR. MORA: Okay. I'll restate it.

MR. JAMES: I'm looking for specific entities.

MR. MORA: Okay.

Q. (BY MR. MORA) Does this Exhibit 5 accurately reflect the locations of the -- business locations for Personal-Touch of Dallas, Inc., and Personal-Touch of San Antonio, Inc.?

MR. JAMES: Objection, form.

A. Yes. That is the address of the San Antonio office and that is the address of the Dallas office.

Q. (BY MR. MORA) This page also lists the Texas location contact address as 222-15 in Bayside, New York. That's on the second page of Exhibit 5. Is that the correct contact address?

A.   Yes.   That's the corporate office.

Q.   And this Web page shows that the name of each of the Texas locations is Personal-Touch Home Care, Inc., correct?

A.   Yes.   As we said, it was a mistake.

Q.   Okay.   And that has been corrected as well?

A.   Yes, it has been.

Q.   Okay.   I'd like to turn to PT Intermediate Holding.

A.   Okay.

Q.   What is the primary business of PT Intermediate Holding?

A.   It is the parent company to all the others.

Q.   Okay.   How long has it been the parent company?

A.   Since 2010 or 2011.   I'm not -- when we formed in east side, when the company formed in East Side.

Q.   Who are the directors of PT Intermediate Holding?

A.   Robert Marx and Dr. Glaubach.

Q.   Are you, Trudy Balk, an officer or director of PT Intermediate Holding, Inc.?

A.   An officer.

Q.   And who are the owners of PT Intermediate Holding, Inc.?

A.   It's owned by Personal-Touch Holding Company,

which is all the companies.

Q.   Are you the vice president of operations for PT Intermediate Holding, Inc.?

MR. JAMES:  Objection, form.

A.   I'm confused by that question.  Explain what you mean.

Q.   (BY MR. MORA)  Are you the vice president of operations for the PT Intermediate Holding, Inc., entity?

MR. JAMES:  I'm sorry.  Objection, form.

A.   I'm a vice president of operations for the entities.

Q.   (BY MR. MORA)  Okay.  Who are the officers of Personal-Touch Home Care of NY, Inc.?

A.   Dr. Glaubach and Mr. Marx.

Q.   Okay.  And who are the directors for Personal-Touch Home Care NY, Inc.?

A.   The same two people.

Q.   Okay.  Does Personal-Touch of Dallas, Inc., provide any employee benefits, health insurance, et cetera, to its employees?

A.   Do we -- yes.  As a company, we provide health benefits to all our employees.

Q.   Okay.  And who provides -- who provides those benefits?  Is it Personal-Touch of Dallas, Inc.?

A.   What do you mean, provides?

Q.   Who is -- which entity is responsible for paying those -- paying those benefits?

          MR. JAMES:  Objection, form.

A.   Obviously, the insurance is handled by the corporate office, which insurance, the rates, negotiating the contracts and so forth and so on, but it is paid for by each of the entities.

Q.   (BY MR. MORA)  Okay.  And would you please clarify when you refer to the corporate office?

A.   I'm talking about the parent office, parent company.

Q.   But the entity, please?

A.   PT Intermediate Holding.

Q.   Okay.  Thank you.

          How about retirement accounts for Personal-Touch of Dallas, Inc., and Personal-Touch of San Antonio, Inc., are those provided by PT Intermediate Holding?

A.   We don't have any.

Q.   Any retirement benefits for employees?

A.   No, we don't.

Q.   Okay.  Who handles the marketing for all the Personal-Touch Home Care companies?

          MR. JAMES:  Objection, form.

Q.    (BY MR. MORA)   Is PT Intermediate Holding responsible for marketing?

A.    No.   Each of the entities is responsible for marketing.

Q.    Okay.

A.    Let me clarify that.   Obviously, there can be input from the parent company, but each of them is responsible for how they want to market and what they market.

Q.    Okay.   As far as billing for the Texas entities, both Personal-Touch of Dallas, Inc., and Personal-Touch of San Antonio, Inc., who is responsible for billing for those entities?

A.    Billing meaning what?   Billing for what?

Q.    Billing for the services provided by those entities.

A.    Who is responsible for?

Q.    For the billing and the services that are provided by each of those entities.

A.    Are you talking about payroll?

Q.    No.   I was going to ask about payroll as well, but actually billing for the services that those entities provide, the home health services, the --

A.    Right.   They bill it.   The individual offices bill it with oversight from the parent.

Q. Okay. And is each individual office also responsible for that office's payroll obligations?

A. They input all the payroll, yes.

Q. Okay. And are those checks then paid by those entities as well?

A. They're paid by the holding company, but, you know, obviously -- I'm forgetting the word, but attributed to each of the companies.

Q. Okay.

A. It comes from one pot, but then it's, you know --

MR. JAMES: Objection, nonresponsive.

Q. (BY MR. MORA) Have you heard of Personal-Touch Home Aides?

A. Yes.

Q. Can you identify this company for us, its correct legal name?

A. There is -- Personal-Touch Home Aides of New York is our Brooklyn location.

(Exhibit Number 6 was marked)

Q. Okay. I'm handing you what's been marked as Exhibit 6. This appears to be a check from Personal-Touch Home Aides to LMS Consulting, LLC. Have you seen this document?

A. Yes.

Q.   And do you know where this document came from?

A.   From payroll, I suppose.  Accounts payable.

Q.   Okay.  Does Personal-Touch Home Aides do business under a different name?

A.   Does who?

Q.   I'm sorry.  Does Personal-Touch Home Aides do business under a different name?

A.   No.

Q.   Does Personal-Touch Home Aides have a contract with LMS Consulting, LLC?

A.   No.

Q.   Does Personal-Touch Home Aides share an address with Personal-Touch of NY, Inc.?

A.   No.

Q.   And do you perform any services for Personal-Touch Home Aides?

A.   Do what?

Q.   Do you perform any services for Personal-Touch Home Aides?

A.   Meaning you or who?

Q.   I'm sorry.  You, as Trudy Balk, do you perform any services for them?

A.   For who?

Q.   For Personal-Touch Home Aides, for this entity.

A.   No.

(Exhibit Number 7 was marked)

Q.   I'm handing you what's been marked as Exhibit Number 7, which appears to be a check from Personal-Touch Holding Corp. to LMS Consulting, LLC. Have you ever seen this document before?

A.   Yes.

Q.   And do you -- do you know where this document came from?

A.   From AP.  It's a payment, yeah.

Q.   Okay.  And does Personal-Touch Holding Corp. do business under a different name?

A.   No.

Q.   Okay.  And does Personal-Touch Holding Corp. have a contract with LMS Consulting, LLC?

A.   No.

Q.   Okay.  Do you provide any services for Personal-Touch Holding Corp.?

A.   Do I personally?

Q.   Yes, ma'am.

A.   It's a holding corp.  I work for the parent.

Q.   Okay.  Has Personal-Touch of NY, Inc., ever been a plaintiff or defendant in a lawsuit?

MR. JAMES:  Which entity?

A.   Which entity?

Q.   (BY MR. MORA)  Personal-Touch of NY, Inc.

A.    Personal-Touch Home Care of --

Q.    Of NY, Inc.

A.    Not to my recollection.

(Exhibit Number 8 was marked)

Q.    Okay.  I'm handing you what's been marked as Exhibit Number 8.  It appears to be a stock certificate of Personal-Touch Home Care of New York, Inc.  Have you ever seen this document before?

A.    Yeah.  Yes.

Q.    Who owns the remainder of the authorized shares?

MR. JAMES:  Objection, form.

Q.    (BY MR. MORA)  The stock certificate says that PT Intermediate Holding, Inc., is the owner of 40 shares of Personal-Touch Home Care New York, Inc.  What entity holds -- is there any entity that holds any other shares in Personal-Touch Home Care of New York, Inc.?

A.    I actually do not know.

Q.    Okay.  Can you identify the -- on the bottom left of the exhibit, there's a signature of the secretary.  Can you please identify the signature there?

A.    Robert Marx.

Q.    And on the bottom right-hand side, it says that it's the signature of the president.  Can you identify the signature there?

A. Dr. Felix Glaubach.

(Exhibit Number 9 was marked)

Q. I'm handing you what's been marked as Exhibit Number 9, which appears to be a stock certificate of PT Home Services of Dallas, Inc. Can you identify the signature on the bottom left-hand corner for the secretary?

A. Robert Marx.

Q. Okay. And would you please identify the signature on the bottom right as the president?

A. Dr. Felix Glaubach.

(Exhibit Number 10 was marked)

Q. Okay. I'm handing you what's been marked as Exhibit Number 10, which appears to be a stock certificate of PT Home Services of San Antonio, Inc. Do you recognize this document?

A. Yes.

Q. Would you please identify the signature of the secretary on the bottom left hand of the exhibit?

A. Robert Marx.

Q. And would you please identify the signature on the bottom right?

A. Dr. Felix Glaubach.

(Exhibit Number 11 was marked)

Q. I'm handing you what's been marked as Exhibit

Number 11.  With regards to Personal-Touch Holding Corp., does Personal-Touch Holding Corp. administer an employee stock ownership plan for the Personal-Touch companies?

MR. JAMES:  Objection, form.

A.  That's legal stuff.  I'm not sure who administers it.

Q.  (BY MR. MORA)  Okay.  Do you know who Anthony Castiglione is?

A.  Yes.

Q.  Okay.  And who is he?

A.  He's a controller in the corporate office in the parent company.

Q.  Okay.  And are you familiar with Personal-Touch Home Care IPA, Inc.?

A.  Yes.

Q.  And who are they?

A.  That is a new entity that is in formation, basically, for business that is managed care business that's being organized in New York state.

MR. MORA:  Okay.  I have no further questions.

MR. JAMES:  Okay.  Let's take a quick break.  Is that okay?

MR. MORA:  Sure.

(Recess from 9:43 to 9:58)

EXAMINATION

BY MR. JAMES:

Q.   Dr. Balk, earlier he asked you a question about who bills for the services provided by the Dallas and the San Antonio entities.  Do you remember that question?

A.   Yes, I do.

Q.   Okay.  And if I remember correctly -- I was trying to write while everyone was talking, but I think you said the holding company did so.  Which holding company were you referring to when you said that a holding company provided billing services for those entities?

A.   PT Intermediate Holding, Inc.

Q.   Okay.  All right.  Now, does PT Intermediate Holding, Inc., in fact, provide billing services for the Dallas and San Antonio entities?

A.   Yes.  The billing is done by the entity itself and then it comes to corporate where the files are disbursed to the right --

Q.   Who does the actual billing for the Dallas entity, for example?

A.   In the office.  It is done locally.

Q.   By the Dallas entity?

A.    By the Dallas entity.

Q.    And who does the billing for the San Antonio entity?

A.    Also by the San Antonio entity.

Q.    Okay.  He asked you if you, Dr. Balk, provided any services for Personal-Touch Holding Corp., and I think that you said that you did not.  Do you provide any services for Personal-Touch Holding Corp.?

A.    I'm the vice president of operations.

MR. JAMES:  Okay.  All right.  I'll pass.

MR. MORA:  No further questions.

MR. JAMES:  Okay.  Thank you very much.

MR. MORA:  Thank you for your time.

THE REPORTER:  How would you like to handle signature?

MR. JAMES:  Send it to me, please.

(Proceedings concluded at 9:59 a.m.)

                    CHANGES AND SIGNATURE

WITNESS NAME: TRUDY BALK   DATE: APRIL 30, 2014

PAGE   LINE   CHANGE                REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Signature: _____ Date: _____

I, TRUDY BALK, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_____

TRUDY BALK

THE STATE OF _____)

COUNTY OF     _____)

Before me _____ on this day personally appeared TRUDY BALK, known to me (or proved to me under the oath or through _____) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _____ day of _____, _____.

_____

NOTARY PUBLIC IN AND FOR

THE STATE OF _____

COMMISSION EXPIRES: _____

CAUSE NO. 2014CI00450

LMS CONSULTING, LLC,      ) IN THE DISTRICT COURT
            Plaintiff    )
                         )
                         )
VS.                      ) 45TH JUDICIAL DISTRICT
                         )
PT HOME SERVICES OF DALLAS,)
INC. d/b/a Personal-Touch  )
Home Care, Inc., PT HOME    )
SERVICES OF SAN ANTONIO,    )
INC. d/b/a Personal-Touch  )
Home Care, Inc., and        )
PERSONAL-TOUCH HOME CARE    )
OF NY, INC. f/k/a            )
PERSONAL-TOUCH HOME CARE,   )
INC.,                       )
            Defendants    ) BEXAR COUNTY, TEXAS

*********************************************************

REPORTER'S CERTIFICATION

DEPOSITION OF TRUDY BALK

APRIL 30, 2014

*********************************************************

    I, Christi Sanford, CSR, RPR, CRR, Certified

Shorthand Reporter in and for the state of Texas, hereby

certify to the following:

    That the witness, TRUDY BALK, was duly sworn by the

officer and that the transcript of the oral deposition

is a true record of the testimony given by the witness;

    That the deposition transcript/errata sheet was

submitted on _____ to the witness or to

the attorney for the witness for examination, signature

and return to the officer by _____;

That the amount of time used by each party at the deposition is as follows:

Mr. Alejandro Mora:  33 minutes
Mr. Monte F. James:  1 minute

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes all parties of record:

Mr. Alejandro Mora, Attorney for Plaintiff
Mr. Monte F. James, Attorney for Defendants

I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to by me this 12th day of May, 2014.

_____
Christi Sanford, CSR, CRR, RPR
Texas Certification No. 6720
Certification Expires 12/31/15

Firm Registration No. 105
JANIS ROGERS & ASSOCIATES
1545 W. Mockingbird Lane, Suite 1032
Dallas, Texas 75235
(214) 631-2655

FURTHER CERTIFICATION UNDER RULE 203 TRCP

DEPOSITION OF TRUDY BALK

APRIL 30, 2014

The original deposition was/was not returned to the deposition officer signed/unsigned on _____;

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to Mr. Alejandro Mora, Custodial Attorney;

That $_____ is the deposition officer's charges to Plaintiff(s) for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3, and that a copy of this certificate was served on all parties shown herein on _____, and filed with the Clerk.

Certified to by me this _____ day of _____, 2014.

_____
Christi Sanford, CSR, CRR, RPR
Texas Certification No. 6720
Certification Expires: 12/31/15

Firm Registration No. 105
JANIS ROGERS & ASSOCIATES
1545 W. Mockingbird Lane, Suite 1032
Dallas, Texas 75235
(214) 631-2655

30

CHANGES AND SIGNATURE

WITNESS NAME: TRUDY BALK   DATE: APRIL 30, 2014

PAGE   LINE   CHANGE                    REASON

10   1   "PT INTERMEDIATE HOLDING" TO PERSONAL TOUCH HOLDING CORP   Reason: made a mistake

18   16   "in Eastside, when the company formed in Eastside" to "an ESOP, when the company formed an ESOP" Reason: court reporter mistake

20   14   "PT Intermediate Holding" to Personal Touch Holding Corp"

20   "we don't have any" to "A 401K is administered by Personal Touch Holding Corp."

22   "no we don't" to "A 401K is administered by Personal Touch Holding Corp" Reason: made a mistake

24   20   "I work for the parent" to "I work for Personal Touch Holding Corp" Reason: made a mistake

28   15   "PT Intermediate Holding Inc" to Personal Touch Holding Corp."

16   "PT Intermediate Holding Inc" to "Personal Touch Holding Corp." Reason: made a mistake

Signature: ___Dr Trudy Balk___   Date: 6/3/14

I, TRUDY BALK, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

_Dr Trudy Balk_
TRUDY BALK

THE STATE OF _New York_ )

COUNTY OF _Kings_ )

Before me _Anthony J Castiglione_ on this day personally appeared TRUDY BALK, (known to me) (or proved to me under the oath or through _____ ) (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _3_ day of _June_ , _2014_ .

NOTARY PUBLIC IN AND FOR

THE STATE OF _New York_

COMMISSION EXPIRES: _9/28/14_

CAUSE NO. 2014CI00450

LMS CONSULTING, LLC,              ) IN THE DISTRICT COURT
                    Plaintiff    )
                                 )
                                 )
VS.                              ) 45TH JUDICIAL DISTRICT
                                 )
PT HOME SERVICES OF DALLAS,)
INC. d/b/a Personal-Touch        )
Home Care, Inc., PT HOME         )
SERVICES OF SAN ANTONIO,         )
INC. d/b/a Personal-Touch        )
Home Care, Inc., and             )
PERSONAL-TOUCH HOME CARE         )
OF NY, INC. f/k/a                )
PERSONAL-TOUCH HOME CARE,        )
INC.,                            )
                    Defendants   ) BEXAR COUNTY, TEXAS

**********************************************************

REPORTER'S CERTIFICATION

DEPOSITION OF TRUDY BALK

APRIL 30, 2014

**********************************************************

I, Christi Sanford, CSR, RPR, CRR, Certified Shorthand Reporter in and for the state of Texas, hereby certify to the following:

That the witness, TRUDY BALK, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript/errata sheet was submitted on ___05.12.14___ to the witness or to the attorney for the witness for examination, signature and return to the officer by ___06.01.14___ ;

That the amount of time used by each party at the deposition is as follows:

Mr. Alejandro Mora:   33 minutes
Mr. Monte F. James:   1 minute

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes all parties of record:

Mr. Alejandro Mora, Attorney for Plaintiff
Mr. Monte F. James, Attorney for Defendants

I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to by me this 12th day of May, 2014.

*Christi Sanford*

Christi Sanford, CSR, CRR, RPR
Texas Certification No. 6720
Certification Expires: 12/31/15

Firm Registration No. 105
JANIS ROGERS & ASSOCIATES
1545 West Mockingbird Lane
Suite 1032
Dallas, Texas 75235
(214) 631-2655

# APPENDIX 2

2012 WL 2021929
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
Court of Appeals of Texas,
San Antonio.

Lynda J. WATKINS, Appellant
v.
Ohunene Ameena ISA, Appellee.

No. 04–11–00622–CV. | June 6, 2012.

From the 407th Judicial District Court, Bexar County,
Texas, Trial Court No. 2010–CI–11208, Olin B. Strauss,
Judge Presiding.

**Attorneys and Law Firms**

Oscar L. Cantu Jr., Law Offices of Oscar Cantu, San
Antonio, TX, for Appellant.

Dan Vana, Cathrin J. Martinez, Benjamin, Vana, Martinez
& Biggs, L.L.P, San Antonio, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN
MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## MEMORANDUM OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

**\*1** The sole issue in this appeal is whether the trial court
erred in granting Dr. Ohunene Isa's motion to dismiss
under the election of remedies provision of the Texas Tort
Claims Act. Because we hold Isa did not prove she was
acting within the scope of her employment at the time of
the automobile accident at issue, we reverse the trial
court's judgment.

## BACKGROUND

The automobile accident giving rise to the underlying
lawsuit occurred on August 5, 2009. Lynda Watkins
timely filed her lawsuit against Isa alleging she was
negligent in the operation of her motor vehicle causing
Watkins's injuries. Isa moved for dismissal of the suit
against her asserting that at the time of the accident she
was driving in the course and scope of her employment as
a medical resident for the Texas Tech University Health
Sciences Center, a governmental unit. *See*TEX. CIV.
PRAC. & REM.CODE ANN. § 101.106(f) (West 2011).
Isa filed two affidavits in support of her motion to
dismiss—the affidavit of Gena Jones[1] and the affidavit of
Dr. Terry McMahon.[2] Watkins objected to both affidavits
as conclusory. Watkins did not amend her pleading to sue
only Texas Tech University Health Sciences Center, but
continued her suit against Isa only. The trial court
conducted a hearing on Isa's motion to dismiss. The court
denied Watkins's objections to the affidavits filed in
support of Isa's motion and granted Isa's motion to
dismiss her from the suit. This appeal followed. On
appeal, Watkins contends that the trial court erred in (1)
denying Watkins's objections to the affidavit testimony
filed in support of Isa's motion because the affidavits are
conclusory, self-serving, and fail to give any foundation
to support the conclusions of fact and law made therein,
and (2) granting Isa's motion to dismiss because Isa was
not sued within the general scope of her employment with
a governmental entity.

## APPLICABLE LAW AND BURDEN

Section 101.106 of the Tort Claims Act, entitled "Election
of Remedies," contains six subsections, (a) through (f),
dealing with grants of immunity and procedural
requirements for suits seeking to recover from a
governmental unit, its employee, or both. TEX. CIV.
PRAC. & REM.CODE ANN. § 101.106(a)-(f) (West
2011).Subsection (f) of section 101.106 applies when an
individual employee of a governmental entity is sued in
his official capacity and seeks dismissal based on official
immunity. *Id.* at § 101.106(f). Subsection (f) provides,

> If a suit is filed against an
> employee of a governmental unit
> based on conduct within the
> general scope of that employee's
> employment and if it could have
> been brought under this chapter
> against the governmental unit, the
> suit is considered to be against the
> employee in the employee's official

capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

**\*2** *Id.* Based on the plain language of the statute, it is the governmental employee's burden to seek dismissal under section 101.106(f).*Id.* Thus, as the moving party, it is the employee's burden to present evidence establishing (1) that the suit is based on conduct within the general scope of the employee's employment and (2) that the suit could have been brought under the Texas Tort Claims Act against the governmental unit. *Id.;Franka v. Velasquez,* 332 S.W.3d 367, 381 (Tex.2011). Actually, the first prong of the above test encompasses two inquires—whether the individual defendant was an employee of a governmental unit and whether she was acting in the scope of that employment at the relevant time. *Turner v. Zellers,* 232 S.W.3d 414, 417 Tex.App.-Dallas 2007, no pet.), *disapproved on other grounds byFranka,* 332 S.W.3d at 382 n. 67.

In the instant case, the parties do not dispute that Texas Tech University Health Sciences Center is a governmental entity, that Isa was an employee of that governmental entity on the day of the accident, or that the suit could have been brought under the Texas Tort Claims Act against the governmental entity. They do dispute, however, whether Isa was acting within the general scope of her employment at the time of the automobile accident. The Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority."Tex. Civ. Prac. & Rem.Code Ann. § 101.001(5) (West Supp.2011).

**STANDARD OF REVIEW**

The election of remedies provision under the current Texas Tort Claims Act confers immunity from suit or recovery. *Franka,* 332 S.W.3d at 371 n. 9."Immunity from suit deprives a trial court of jurisdiction."*City of Houston v. Williams,* 353 S.W.3d 128, 133 (Tex.2011). We review a trial court's ruling on a challenge to the trial court's subject matter jurisdiction de novo.*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 228

(Tex.2004). We review matters of statutory construction de novo. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008).

**DISCUSSION**

Dr. Terry McMahon, Chairman of the Department of Psychiatry for Texas Tech University Health Sciences Center, testified by affidavit that Isa was acting in the course and scope of her employment at the time of the automobile accident. His affidavit reads in relevant part as follows:

> During August of 2009, Dr. Ohunene Ameena Isa was in San Antonio as a part of her residency training with Texas Tech University Health Sciences Center. At the time of the accident on August 5, 2009, Dr. Ohunene Ameena Isa was acting within the course and scope of her employment with Texas Tech University Health Sciences Center.

Watkins filed written objections to McMahon's affidavit[3] and argued during the hearing that the affidavit should be disregarded because it failed to state facts to support the legal conclusion that Isa was acting within the course and scope of her employment with a governmental entity at the time of the accident. The trial court denied Watkins's objections to McMahon's affidavit. We review trial court rulings on the admissibility of evidence under an abuse of discretion standard. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000) (per curiam).

*Evidentiary Challenge to Conclusory Affidavit*
**\*3** "A conclusory statement is one that does not provide the underlying facts to support the conclusion."*Rodriguez v. Wal–Mart Stores, Inc.,* 52 S.W.3d 814, 823 (Tex.App.-San Antonio 2001), *rev'd on other grounds,*92 S.W.3d 502 (Tex.2002). Conclusory statements without factual support are not credible, and are not susceptible to being readily controverted. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996) (per curiam); TEX.R. CIV. P. 166a(f) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Here, McMahon provides

absolutely no factual basis or explanation for his statement that Isa was acting in the course and scope of her employment at the time of the accident. By simply stating "at the time of the accident ... Isa was acting within the course and scope of her employment with Texas Tech University Health Sciences Center," McMahon asserts only a legal conclusion without factual basis or rationale. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Affidavit testimony that is conclusory is substantively defective and amounts to no evidence. *See Coastal Transport Co. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 232 (Tex.2004) (opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact more probable or less probable); *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) (testimony comprised only of legal conclusions is insufficient to support summary judgment as a matter of law); *City of Mission v. Popplewell,* 156 Tex. 269, 294 S.W.2d 712, 717 (1956) ("Parol evidence in the form of opinions and conclusions without documentary basis is inadmissible to establish such title, and even if admitted without objection is of no probative force."). For this reason, we conclude the trial court erred when it denied Watkins's objection to McMahon's affidavit. We now turn to the remaining record to determine if there is other proof that Isa was acting in the course and scope of her employment at the time of the accident.

### *Course and Scope of Employment*
As a general rule, an employee is not in the course and scope of his employment while driving his own vehicle to and from his place of work. *See Kennedy v. Am. Nat'l Ins. Co.,* 130 Tex. 155, 107 S .W.2d 364, 365 (1937); *Terrell ex rel. Estate of Terrell v. Sisk,* 111 S.W.3d 274, 278 (Tex.App.-Texarkana 2003, no pet.)(holding that county employee, who killed person with car, did not act in scope of employment because she was on her way to personal appointment in her own car). Although there are exceptions to this general rule, Isa has wholly failed to present any evidence about the circumstances of her driving on the day of the accident. Other than the conclusory statement by McMahon, Isa has presented no evidence that she was in the performance of the duties of her employment at the time of her automobile accident. As stated earlier, we find McMahon's affidavit substantively defective and therefore insufficient as a matter of law. *See Anderson,* 808 S.W.2d at 55. On this

record, Isa has failed to meet her burden required for dismissal pursuant to section 101.106(f).*Franka,* 332 S.W.3d at 381; *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Webber–Eells,* 327 S.W.3d 233, 242 (Tex.App.-San Antonio 2010, no pet.)("If the plaintiff decides to continue the suit against the employee, the plaintiff need not take any action, and the employee's motion can be granted only if the employee proves that his conduct was within the general scope of his employment and that the suit could have been brought against the governmental unit.").

**\*4** Nor are we persuaded by Isa's argument that Watkins had a burden to establish that Isa was not acting within the course of her employment. First, that contention is contrary to the plain language of the statute which places the burden on the governmental employee to seek dismissal under section 101.106(f).TEX. CIV. PRAC. & REM.CODE ANN. § 101.106(f). It is the movant's burden to establish that the conditions of the statute have been met in order to obtain dismissal under section 101.106(f).*See Kelemen v. Elliott,* 260 S.W.3d 518, 520 (Tex.App.Houston [1st Dist.] 2008, no pet.). In *Kelemen,* a former city police officer brought suit against the city and a fellow officer claiming she was wrongfully terminated after reporting that she had been sexually assaulted. *Id.* Her suit against the city asserted statutory claims of retaliation and discrimination and her suit against the individual officer asserted various common law assault-based claims. *Id.* The city moved to dismiss the individual officer from the lawsuit based on immunity under section 101.106(f).*Id.* The Houston Court of Appeals refused to dismiss the officer because he failed to meet the first prong of his burden of proof, that is, he failed to show that the alleged assault of a fellow officer was within the general scope of his employment with the city. *Id.* at 524.

### CONCLUSION

Because Isa did not meet her burden of establishing that she was acting in the course and scope of her employment with a governmental entity at the time of the automobile accident, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

---

Footnotes

1    Jones, the Assistant Vice President of Human Resources for Texas Tech University Health Sciences Center, testified in relevant

part that Isa was "employed" by TTUHSC from September 1, 2007 until August 31, 2010.

2      McMahon, Chairman of the Department of Psychiatry for Texas Tech University Health Sciences Center, testified in relevant part that at the time of the accident on August 5, 2009, Isa "was acting within the course and scope of her employment" with TTUHSC.

3      Watkins also filed objections to the affidavit of Gena Jones who testified that Isa was employed by Texas Tech University Health Sciences Center. However, it is not necessary to our opinion to address Watkins's objections to the Jones affidavit. *See*TEX.R.APP. P. 47.1.

---

**End of Document**                                  © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX 3

2008 WL 441822
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
San Antonio.

JI–HAW INDUSTRIAL CO., LTD. and JBT
International, Inc., Appellants
v.
Bonnie BROQUET, Individually and as Next
Friend and as Legally Appointed Representative of
Kyla Deanne Lazo, a Minor, Microsoft
Corporation, Gamestop Corp., Gamestop of Texas
(GP), LLC, Gamestop of Texas, LP, and Roel
Santos, Appellees.

No. 04–07–00622–CV. | Feb. 20, 2008.

**Synopsis**
**Background:** Consumer brought products liability action against nonresident manufacturer. The 229th Judicial District Court, Duval County, Alex William Gabert, J., denied manufacturer's special appearance, and manufacturer appealed.

**[Holding:]** The Court of Appeals, Steven C. Hilbig, J., held that consumer alleged sufficient facts to bring defendant manufacturer within long-arm statute.

Affirmed.

West Headnotes (9)

**[1]**     **Appeal and Error**
            Cases Triable in Appellate Court

            Whether a court has jurisdiction over a nonresident defendant is a question of law subject to de novo review.

Cases that cite this headnote

**[2]**     **Courts**
            Allegations, pleadings, and affidavits

            The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. V.T.C.A., Civil Practice & Remedies Code § 17.042.

Cases that cite this headnote

**[3]**     **Courts**
            Allegations, pleadings, and affidavits

            In an action against a nonresident defendant, the plaintiff is not required to detail all theories or bases of personal jurisdiction relied upon; rather, the only requirement is that the plaintiff plead allegations sufficient to bring the nonresident defendant within the province of the long-arm statute. V.T.C.A., Civil Practice & Remedies Code § 17.042.

Cases that cite this headnote

**[4]**     **Courts**
            Presumptions and Burden of Proof as to Jurisdiction

            Once the plaintiff meets the pleading requirement pleads sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute, the burden shifts to the defendant challenging jurisdiction through a special appearance to negate all bases of personal jurisdiction. V.T.C.A., Civil Practice & Remedies Code § 17.042.

Cases that cite this headnote

Cases that cite this headnote

**[5]** **Courts**
Presumptions and Burden of Proof as to Jurisdiction

In an action against a nonresident defendant, if a plaintiff does not plead jurisdictional allegations, i.e., that the defendant has committed any act in Texas, the defendant can satisfy its burden to negate all bases of personal jurisdiction by simply proving it is a nonresident. V.T.C.A., Civil Practice & Remedies Code § 17.042.

1 Cases that cite this headnote

**[6]** **Courts**
Presumptions and Burden of Proof as to Jurisdiction

In an action against a nonresident defendant, if the defendant proves nonresidency or otherwise negates personal jurisdiction, the burden then returns to the plaintiff to show as a matter of law the trial court has personal jurisdiction over the defendant. V.T.C.A., Civil Practice & Remedies Code § 17.042.

Cases that cite this headnote

**[7]** **Constitutional Law**
Non-residents in general
**Courts**
Actions by or Against Nonresidents, Personal Jurisdiction In; "Long-Arm" Jurisdiction

Courts may assert personal jurisdiction over a nonresident if (1) the long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. U.S.C.A. Const.Amend. 14; V.T.C.A., Civil Practice & Remedies Code § 17.042.

**[8]** **Constitutional Law**
Non-residents in general
**Courts**
Actions by or Against Nonresidents, Personal Jurisdiction In; "Long-Arm" Jurisdiction

In an action against a nonresident defendant, when the plaintiff has pled facts authorizing jurisdiction under the long-arm statute, a nonresident defendant can negate jurisdiction by proving (1) the defendant is not amenable to service under the long-arm statute, or (2) exercising jurisdiction over the non-resident defendant would not comport with due process. U.S.C.A. Const.Amend. 14; V.T.C.A., Civil Practice & Remedies Code § 17.042.

Cases that cite this headnote

**[9]** **Courts**
Allegations, pleadings, and affidavits
**Courts**
Presumptions and Burden of Proof as to Jurisdiction

Consumer's complaint, describing incident in which video game allegedly caught fire, alleging it was a result of the video game including component parts manufactured by defendant, alleging the incident forming the basis of the suit occurred in Texas, and that consumer was a Texas resident, alleged sufficient facts to bring defendant manufacturer within long-arm statute, and thus manufacturer could not simply prove its nonresidency to sustain its burden to negate all bases of personal jurisdiction. V.T.C.A., Civil Practice & Remedies Code § 17.042(2).

Cases that cite this headnote

**Attorneys and Law Firms**

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Andrew L. Kerr, J. Alex Huddleston, Deborah D. Difilippo, Strasburger & Price, L.L.P., San Antonio, TX, for Appellant.

Douglas A. Allison, Law Offices of Douglas A. Allison, Darrell L. Barger, Hartline, Dacus, Barger, Dreyer & Kern, L.L.P., David W. Green, Eduardo Roberto Rodriguez, Rodriguez, Colvin, Chaney & Saenz, L.L.P., Brownsville, TX, Jerry K. Clements, Locke Liddell & Sapp, L.L.P., Austin, TX, Thomas G. Yoxall, Locke Lord Bissell & Liddell L.L.P., Dallas, TX, Scot G. Doyen, Doyen Sebesta, Ltd., L.L.P., Corpus Christi, TX, Reagan Wm. Simpson, King & Spaulding LLP, Houston, TX, William J. Tinning, William J. Tinning, P.C., Portland, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by: STEVEN C. HILBIG, Justice.

**\*1** This is an appeal from the denial of a special appearance. Ji–Haw Industrial Co., Ltd. and JBT International, Inc. ("Ji–Haw") bring three issues contending the trial court erred in denying their special appearance. In its first issue, the resolution of which is dispositive of this appeal, Ji–Haw alleges its proof of nonresidency was sufficient to sustain its special appearance. We disagree and affirm the denial of Ji–Haw's special appearance.

## BACKGROUND

Bonnie Broquet, Individually and as Next Friend and as Legally Appointed Representative of Kyla Deanne Lazo, a Minor, brought suit against Ji–Haw and several other defendants to recover personal injury damages allegedly sustained when an XBOX game system caught fire. Ji–Haw filed a special appearance asserting as its only ground that it was not a Texas resident. Ji–Haw provided proof of nonresidency through the affidavit of an employee. Ji–Haw argued proof of nonresidency was sufficient to sustain its special appearance because Broquet failed to plead any jurisdictional facts that would subject Ji–Haw to the jurisdiction of a Texas court.[1] *See Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.,* 167 S.W.3d 432, 441 (Tex.App.-San Antonio 2005, no pet.).

After a hearing, the trial court denied Ji–Haw's special appearance. Ji–Haw timely perfected this appeal.

## APPLICABLE LAW

### *Standard of Review and Burden of Proof*

**[1]** Whether a court has jurisdiction over a nonresident defendant is a question of law subject to *de novo* review. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007) (citing *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002)). When reviewing an issue *de novo,* the appellate court "exercises its own judgment and redetermines each legal issue," without any deference to the trial court. *Hotels.com, L.P. v. Canales,* 195 S.W.3d 147, 151 (Tex.App.-San Antonio 2006, no pet.) (quoting *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998)).

**[2] [3] [4] [5] [6]** "The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *BMC Software,* 83 S.W.3d at 793. The plaintiff is not required to detail all theories or bases of personal jurisdiction relied upon. *Huynh v. Nguyen,* 180 S.W.3d 608, 619 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Rather, the only requirement is that the plaintiff plead allegations sufficient to bring the nonresident defendant within the province of the long-arm statute. *Id.* Once the plaintiff meets this pleading requirement, the burden shifts to the defendant challenging jurisdiction through a special appearance to negate all bases of personal jurisdiction. *BMC Software,* 83 S.W.3d at 793. If, however, "the plaintiff does not plead jurisdictional allegations, *i.e.,* that the defendant has committed any act in Texas," the defendant can satisfy its burden by simply proving it is a nonresident. *Oryx Capital,* 167 S.W.3d at 441. If the defendant proves nonresidency or otherwise negates personal jurisdiction, the burden then returns to the plaintiff to show as a matter of law the trial court has personal jurisdiction over the defendant. *Id.*

### *Substantive Law*

**\*2** **[7] [8]** Texas courts may assert personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state

constitutional due-process guarantees." *Moki Mac,* 221 S.W.3d at 574. When the plaintiff has pled facts authorizing jurisdiction under the long-arm statute, a nonresident defendant can negate jurisdiction by proving (1) the defendant is not amenable to service under the Texas long-arm statute, or (2) exercising jurisdiction over the non-resident defendant would not comport with due process. *See id.* at 574–75. The long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The statute describes what, "[i]n addition to other acts," may constitute doing business in Texas. Pertinent to this appeal is subsection two, which provides that a nonresident does business in Texas if it "commits a tort in whole or in part in this state." *Id.* § 17.042(2).

### *Analysis*

[9] In its first issue, Ji–Haw contends the trial court erred in denying its special appearance because it met its burden to negate all bases of jurisdiction. Ji–Haw argues that Broquet did not plead any jurisdictional allegations in her petition. Ji–Haw contends it was therefore only required to prove nonresidency and its proof on this point was undisputed. We recognize that a failure to plead jurisdictional allegations requires the defendant simply to prove nonresidency to sustain its burden. However, we disagree with the contention that Broquet did not plead jurisdictional allegations invoking the long-arm statute.

In her First Amended Petition, Broquet specifically named each defendant and stated that all defendants would be referred to collectively as "Defendants." She alleged that a fire started in her home as a result of a defect in an XBOX game system ("the game console itself and/or the power line cord, and/or these components in combination") that was "designed, manufactured and marketed by Defendants." In a separate section of the petition entitled "Defendants Ji–Haw," Broquet alleged Ji–Haw was "legally responsible for the incident made the basis of this suit." She asserted Ji–Haw was guilty of negligence and its negligence was a proximate cause of the incident underlying the suit. Broquet further alleged Ji–Haw was strictly liable and that its conduct was a producing cause of the fire and injuries. In asserting strict liability, she referenced the theories set forth against other defendants earlier in the petition. Finally, she alleged that "[a]ll or a substantial part of the events or omissions giving rise to this claim occurred in Duval County, Texas," and she is a resident of Texas. These allegations, when considered together and liberally construed, assert

that Ji–Haw committed a tort in Texas, which is all that is required under the long-arm statute. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004) (holding that in determining plea to jurisdiction pleadings are liberally construed in favor of pleader in assessing whether he has pled sufficient facts to demonstrate trial court's jurisdiction); *id.* at 240 (Brister, J., dissenting) (categorizing substance of special appearance as plea to jurisdiction); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(2). By describing the incident, alleging it was a result of the XBOX, including component parts manufactured by the "Defendants," alleging the incident forming the basis of the suit occurred in Texas, and that she is a Texas resident, Broquet did, contrary to Ji–Haw's assertion, allege sufficient facts to bring Ji–Haw within the long-arm statute.

**\*3** Ji–Haw asserts that portions of the jurisdictional allegations discussed above should not be considered because they are contained in that part of the petition asserting venue and that Broquet's tort allegations are insufficient. We disagree. In her petition, Broquet alleged:

> Venue is proper in Duval County, Texas, pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code. **All or a substantial part of the events or omissions giving rise to this claim occurred in Duval County, Texas.**

(emphasis added). We have found no case, and Ji–Haw has cited none, holding or suggesting that the sufficiency of jurisdictional allegations is dependent upon their placement within the petition. Further, we have found no case, and Ji–Haw has cited none, holding or suggesting that we should not consider the petition as a whole in determining whether a plaintiff has pled sufficient jurisdictional facts to invoke the long-arm statute. At least one court has held that consideration of the venue portion of a petition is proper in determining the sufficiency of jurisdictional allegations. *See Thunderbird Supply Co. v. Williams,* 161 S.W.3d 731, 733–34 (Tex.App.-Beaumont 2005, no pet.).

In *Thunderbird,* the plaintiff alleged he was a Jefferson County, Texas resident and in his venue allegation stated, "Venue in Jefferson County is proper in that all or a substantial part of the events or omissions giving rise to the claims occurred in this county." *Id.* at 733. In other portions of the petition the plaintiff alleged "he was exposed to 'various toxic products designed,

manufactured and marketed' by the thirteen so-called 'Jewelry Defendants,' " but did not allege the exposure occurred in Texas. *Id.* The court first noted that commission of a tort within the state is one means by which a nonresident may be deemed to be doing business in Texas. *Id.* at 733–34 (citing TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1997)). Then, obviously considering the venue allegation with the general tort allegation, the court held the plaintiff had "met his initial burden of pleading allegations sufficient to bring [the defendant] within the long-arm statute," thereby shifting the burden to the defendant to negate all bases of personal jurisdiction alleged. *Id.* at 734.

Just as in *Thunderbird,* Broquet alleged she was a Texas resident and, in the venue portion of her petition, alleged that all or a substantial part of the events or omissions giving rise to her claims occurred in Texas. In other portions of the petitions she included general negligence allegations against all of the defendants as well as negligence allegations particular to Ji–Haw. Accordingly, Broquet met her initial burden of pleading allegations sufficient to bring Ji–Haw within the long-arm statute. *See id.*

Ji–Haw contends *Thunderbird* is inapplicable because it conflicts with *Siskind v. Villa Found. for Educ.,* 642 S.W.2d 434 (Tex.1982) and *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777 (Tex.2005). We disagree. *Siskind* is factually distinguishable and neither *Siskind* nor *Michiana* address the specific issue presented in this case.

**\*4** In *Siskind,* a plaintiff brought suit against an Arizona school and several individual school employees. 642 S.W.2d at 434–35. The school and the individual defendants filed special appearances. *Id.* at 435. In holding the individual defendants sustained their burden by proving nonresidency, the supreme court made it clear the plaintiff had not alleged any acts by the individuals in Texas. In his allegations, apart from a breach of contract claim, the plaintiff failed to "differentiate between [the school] and the individual [defendants]"; rather, the plaintiff claimed all the defendants were jointly and severally liable, and that the individuals were individually liable and as agents of the school. *Id.* at 436 n. 3. Here, while Broquet alleged the fire was caused by an XBOX "that was designed, manufactured and marketed by Defendants," she also differentiated between the various defendants, alleging negligence and other claims against

each in separate sections of her petition. Broquet did not simply allege Ji–Haw was liable with the other defendants based on joint and several liability, agency, or conspiracy as did the plaintiff in *Siskind.* Moreover, *Siskind* was clearly concerned with the absence of allegations of any acts by the individuals, not with the general nature of the negligence allegations, which is Ji–Haw's actual complaint. *Id.* at 437.

Ji–Haw, quoting *Michiana,* argues jurisdiction "cannot turn on whether a plaintiff alleges wrongdoing—as virtually all will." 168 S.W.3d at 791. However, the issue in *Michiana* was not whether the plaintiff's petition contained sufficient jurisdictional allegations to invoke the long-arm statute. Rather, with regard to the quote relied upon by Ji–Haw, the court was addressing whether jurisdiction is measured by an absence of minimum contacts or a lack of culpability. *Id.* Clearly, *Michiana* is irrelevant to the issue in this case and like *Siskind* does not compel the result sought by Ji–Haw.

We conclude Broquet alleged sufficient jurisdictional facts to bring Ji–Haw within the Texas long-arm statute. Accordingly, the burden shifted to Ji–Haw to negate all bases of personal jurisdiction, *see BMC Software,* 83 S.W.3d at 793, not merely prove non-residency. *See Oryx Capital,* 167 S.W.3d at 441. Because Ji–Haw only alleged and proved non-residency in its special appearance, it did not negate all bases of personal jurisdiction. *See Temperature Sys., Inc. v. Bill Pepper, Inc.,* 854 S.W.2d 669, 673 (Tex.App.-Dallas 1993, writ dism'd by ag't).

We overrule Ji–Haw's first issue. Our resolution of this issue is dispositive of this appeal and, therefore we need not address Ji–Haw's other issues. The trial court's order denying Ji–Haw's special appearance is affirmed.

---

1    After Ji–Haw filed its special appearance and set the matter for hearing, Microsoft Corporation and the Gamestop entities filed cross-claims against Ji–Haw. These entities also filed oppositions to Ji–Haw's special appearance. Given our disposition of this appeal, we need not address the effect, if any, of the cross-claims. We note that only Microsoft Corporation and the Gamestop entities have filed appellees' briefs in this appeal.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.